OPINION
 

 Per Curiam:
 

 Appellant City of Reno (“Reno”) challenges an arbitrator’s opinion and award reducing the punishment imposed upon Reno Fire Department employee Greg McVickers from termination to a thirty-day suspension. Reno contends that McVickers violated an order and was properly terminated by the Reno Fire Department (“Department”) for insubordination. We conclude, given the circumstances of this case and the Department’s tolerance regarding past practices, that the arbitrator did not abuse his discretion. We therefore affirm the district court’s order confirm
 
 *1006
 
 ing the arbitrator’s opinion and award and denying Reno’s application to vacate the award.
 

 FACTS
 

 McVickers commenced his employment with the Reno Fire Department in 1972. In 1987, he was promoted to Fire Battalion Chief. A Battalion Chief works 24-hour shifts beginning at 8:00 a.m., and while on-shift, the Battalion Chief has access to and drives the Department’s marked, white and red Suburban. A Battalion Chief must attend to administrative and oversight responsibilities, which normally are scheduled during the morning and early afternoon hours. After these scheduled hours, Department practice allows “free time” or “standby time” wherein employees may attend to other matters provided they can adequately respond to emergencies. Fire fighters were to utilize their free time at their respective stations, and Battalion Chiefs, who had supervisory responsibilities over several stations, were permitted to utilize free time outside the stations so long as they were able to promptly respond to emergency calls.
 

 In 1989, McVickers entered into a business venture to develop a device that had potential application for fire departments. McVickers approached the Acting Fire Chief Lee Amestoy (“Amestoy”) to tell him about his involvement in this business to ensure that there was no conflict of interest. McVickers stated his intent to attend to this business “off duty, off shift.” In response to the conversation, Amestoy provided McVickers with an interoffice memo (Amestoy memo or Amestoy order) stating as follows:
 

 This memo is provided at your request to document our discussion today, in reference to your entering into a personal business venture for the development, marketing and sales of a fire service related product.
 

 There is no conflict of interest provided:
 

 * You do not present yourself as representing the Reno Fire Department or City of Reno in any connection with the product.
 

 * You do not participate, while on duty, in any research, development, marketing, sales or other function related to the product.
 

 Between April 1989 and November 1990, McVickers admits driving the Department’s Suburban to his Sparks-based business and to associates’ homes while on shift, but during free time. Persons living in the immediate vicinity of the locations where McVickers would travel to further his business interests were interviewed, and claimed that McVickers visited these sites spo
 
 *1007
 
 radically for up to three hours at a time. An investigation revealed that McVickers was developing, marketing and selling nondepartment related goods while on duty.
 

 The Fire Chief made a preliminary decision to terminate McVickers’ employment. On September 24, 1992, McVickers received notice of the following charges against him: insubordination, unauthorized use of city property and equipment, conduct unbecoming a high ranking employee and conduct causing embarrassment to the city, and violations of the rule prohibiting non-city business while on duty. The Fire Chief subsequently decided to terminate McVickers, finding that McVickers “lacked the judgment to function as a Fire Battalion Chief.” The matter then proceeded to arbitration.
 

 During arbitration, McVickers asserted that the Amestoy memo was not an order upon which to find a basis for insubordination, but rather a memo providing guidelines to avoid a conflict of interest. McVickers stressed that he believed that the Amestoy memo’s reference to “on duty” referred to a Department term-of-art denoting duty time, as opposed to free time or ready time. He claimed, and backed up this claim with testimony from former Fire Chief Turner,
 
 [1]
 
 that the Department had a past practice of allowing employees to pursue private business ventures while “on duty” at their work station, but during “free time” or after completion of their normal daily assignments.
 
 [2]
 
 Because McVickers’ work station was essentially the Department’s Suburban for much of his shift and he was indisputably always accessible and promptly responded to any emergency, McVickers asserted that he never intentionally violated Amestoy’s instructions and was not insubordinate.
 

 
 *1008
 
 Reno basically conceded that there were others who engaged in private business ventures while on duty, but qualified this as
 
 de minimus
 
 activity or activity within the station house. Alternatively, the current Fire Chief testified that if this policy existed, it applied only to those confined to the station, not to Battalion Chiefs.
 

 Reno primarily contended that the Amestoy memo was an order and that McVickers not only directly violated Amestoy’s order, but that he violated the trust inherent in the position of Battalion Chief. Reno argued that McVickers was under a duty to follow Amestoy’s order and that if he had any concerns about the order’s policy or language (i.e., “on duty”), he was under a strict duty to follow the order until the concerns were resolved. Furthermore, Reno contended that McVickers openly and remorselessly mischaracterized his actions as
 
 de minimus
 
 and consistent with the Department’s “past practice.” Reno asserted that the Association failed to prove “past practice” with clear and convincing evidence.
 

 Arbitrator Askin, in his twenty-nine-page Opinion and Award, reasoned as follows: (1) that many of the Department’s charges against McVickers were unproven;
 
 [3]
 
 (2) that McVickers visited his business site frequently and on occasion for up to two hours; (3) that Amestoy’s memo did not constitute an order because it never stated it was an order, was entitled “inter-office memo,” and dealt only with a conflict of interest and not with insubordination; (4) that McVickers did not intentionally disregard Amestoy’s memo due to previous Department practice of allowing employees to conduct private business during “free time;” and (5) that toleration for such practices constituted a past practice. The arbitrator, however, concluded that McVickers should have realized his actions conflicted with Amestoy’s instructions and that McVickers should have sought clarification. Consequently, the arbitrator concluded that Reno inappropriately found McVickers guilty of insubordination, but because of McVickers’ failure to seek clarification, he deserved a thirty-day suspension. The arbitrator determined that the lesser penalty was warranted in view of McVickers’ twenty-year, unblemished career, and that it was “commensurate with the severity of the proven offenses in this case, and is consistent with acceptable standards of progres
 
 *1009
 
 sive discipline as contemplated by [the City of Reno and the Association’s Collective Bargaining Agreement].”
 

 Reno applied to the district court for a vacation of the arbitrator’s opinion and award. At the hearing on Reno’s application for relief, the district court initially informed the parties that it believed that the arbitrator mistakenly concluded that Amestoy’s memo was only a memo and not an order, and that McVickers violated Amestoy’s order. The district court then proceeded to determine whether substantial evidence supported the arbitrator’s decision that McVickers did not intentionally violate the Amestoy order given the Department’s tolerance of employees pursuing secondary employment while on free or ready time. During the hearing, the district court expressed dismay that the Department would tolerate such practices, but in the end, the district court found that substantial evidence supported the arbitrator’s decision that McVickers may have reasonably understood Amestoy’s memo to deal with a conflict of interest, rather than insubordination. Reno unsuccessfully attempted to have a rehearing before appealing to this court.
 

 DISCUSSION
 

 “An arbitrator enjoys broad discretion in determining issues under an arbitration agreement. However, the discretion is not without limits. If an award is determined to be arbitrary, capricious, or unsupported by the agreement, it may not be enforced.” Wichinsky v. Mosa, 109 Nev. 84, 89, 847 P.2d 727, 731 (1993).
 

 We share the district court’s expression of dismay over the loose practices apparently permitted in allowing Department personnel to engage in what appears to be rather substantial secondary employment while “on duty.” Nevertheless, the relevant issue we are called upon to decide is whether substantial evidence supported the arbitrator’s decision that McVickers did not intentionally violate Amestoy’s memo. Because the record reveals that: (1) former Chief Turner testified that the Department previously permitted employees to engage in meaningful secondary activity during free time; (2) the present Fire Chief and the City of Reno conceded that fire employees participated in these activities; and (3) McVickers testified that he understood Amestoy’s memo to permit his activities, we conclude that substantial evidence supports the district court’s finding that the arbitrator was not capricious in finding past practice and that McVickers did not intentionally violate Amestoy’s memo.
 

 Past practice is defined as “‘the
 
 accepted
 
 course of conduct
 
 *1010
 
 characteristically repeated in response to the given set of underlying circumstances. . . . [I]t must be
 
 accepted
 
 in the sense of being regarded by the men involved as the
 
 normal
 
 and
 
 proper
 
 response to the underlying circumstances presented.’ ” Richard Mittenthal,
 
 Past Practice and the Administration of Collective Bargaining Agreements,
 
 59 Mich. L. Rev. 1017 (1961) (quoting Sylvester Garret, Chairman, Board of Arbitration, U.S. Steelworkers, Grievance No. NL-453, Docket No. N-146, Jan. 31, 1953 (reported in 2 Steelworkers Arbitration Bull. 1187)). To sustain the burden of proof that a past practice becomes an enforceable right under a collective bargaining agreement, the movant must show by clear and convincing evidence that the practice is “ ‘(1) unequivocal; (2) clearly enunciated and acted upon; and (3) readily ascertainable over a reasonable period of time as a fixed and established practice accepted by both Parties.’”
 
 See Frank Elkouri & Edna A. Elkouri, How Arbitration Works
 
 439 (4th ed. 1985) (quoting Celanese Corp. of Am., 24 LA [Labor Arbitration] 168, 172 (1954)).
 

 Reno essentially argues that no past practice ever allowed Battalion Chiefs to use Department vehicles to attend to personal business outside the jurisdiction. It claims that the evidence, specifically past Chief Turner’s testimony concerning employees who were allowed to participate in personal businesses at their station, was unspecific and sporadic, not approximating the required clear and convincing standard. In addition, Reno argues that the arbitrator’s decision — requiring the City to pay salaries to on duty employees who are not engaged in city work — is against public policy and Nevada statutes. NRS 204.010-.030 (prohibiting city officers from paying money for unauthorized work).
 

 We conclude that the district court did not abuse its discretion in determining that substantial evidence supports the arbitrator’s opinion of a past practice. Former Chief Turner’s testimony made it clear that the Department knew employees engaged in meaningful secondary employment while on duty. Reno never successfully persuaded the district court that the policy of allowing these activities did not apply to Battalion Chiefs. For these same reasons, we conclude that the arbitrator did not act capriciously in determining that the Department understood, accepted, and acquiesced in this practice for a significant period of time.
 
 See
 
 Richard Mittenthal,
 
 Past Practice and the Administration of Collective Bargaining Agreements,
 
 59 Mich. L. Rev. 1017, 1019 (1961). By our ruling, we do not sanction any policy of the Department. In fact, we encourage the Department to clarify their policies regarding meaningful, secondary employment performed while on duty. “ ‘Inherent in every practice is the principle that it is not to be abused and that, if it is, reasonable
 
 *1011
 
 corrective action may be taken. It cannot be inferred that the other party has accepted or acquiesced in the excesses constituting the abuse so as to make them binding.’”
 
 Frank Elkouri & Edna A. Elkouri, How Arbitration Works
 
 446-47 (4th ed. 1985) (quoting Metal Specialty Co., 39 LA [Labor Arbitration] 1265, 1269 (1962)).
 

 Reno expresses dismay at the arbitrator’s conclusion that McVickers did not intentionally disregard Amestoy’s memo, while recognizing that he violated the conflict of interest rules specified in the memo. Reno stresses that McVickers should have been aware of, and should have cleared up, the potential conflict prior to becoming involved in his personal business. Reno also insists that the arbitrator’s infusion of a subjective interpretation of an order (McVickers’ confusion as to past practice) contradicts Department policy and will lead to future discipline problems. Because several persons within the Department testified that they believed the memo was an order, Reno argues that the memo was objectively an order and that McVickers’ actions were insubordinate. Finally, Reno contends that McVickers’ wififul insubordination was manifest when McVickers intentionally misled the Fire Chief by telling him that he would perform personal business “off shift, off duty.”
 

 In his decision, the arbitrator opined:
 

 The Arbitrator is persuaded that Grievant believed that he had disclosed his role in Zip Nut, obtained authorization to engage in that business, and, although mistaken, truly believed that his activities on behalf of Zip Nut were consistent with the Department’s tolerant policy of allowing employees to pursue outside business interests so long as they were performing the duties of their position. Throughout this case, the Department has interpreted Grievant’s position as being “insubordinate” and intentional misconduct, and failed to recognize that based on its own internal practices Grievant had a plausible, albeit mistaken, belief that his actions were permissible. Given this finding concerning Grievant’s state of mind, it is concluded that his visits to the Zip Nut office violated the Amestoy memo, but that the violation was not intentional in the sense that he consciously disregarded Amestoy’s guidance.
 

 During the hearing, the district court reasoned that McVickers may not have realized that his conduct constituted insubordination because the memo never discussed insubordination, but only a conflict of interest.
 

 We understand Reno’s position, but, like the arbitrator and district court before us, we believe it would be unfair to terminate
 
 *1012
 
 McVickers based on the facts of this case. The arbitrator and district court both agreed that McVickers violated the Amestoy memo. Consequently, the issue becomes the degree of punishment McVickers deserved for his misconduct. Given the toleration of the Department with respect to past practice, and the absence of clarifying policies, and despite the fact that we may have reached a different decision, we are unable to conclude that the arbitrator abused his discretion in taking into account all the relevant facts, including McVickers’ subjective intentions, and in deciding on a form of punishment other than termination.
 

 Finally, Reno claims that the arbitrator focused solely on the issue of insubordination at the expense of numerous other violations attributed to McVickers, including the appearance of impropriety, and conduct unbecoming an employee. We disagree. The arbitrator’s opinion specifically deals with several charges, including the improper use of his title, using the station to receive business-related mail, and improperly using the City logo. The arbitrator found that all of these charges were unsubstantiated. We therefore conclude that the arbitrator’s opinion adequately dealt with the specification of charges against McVickers and that the district court did not err in upholding the arbitrator’s opinion.
 

 We have considered all other arguments raised in the parties’ briefs and during oral arguments and conclude that they lack merit.
 

 CONCLUSION
 

 For the reasons stated above, we affirm the order of the district court.
 

 [1]
 

 At one point during the arbitration, the arbitrator asked Chief Turner:
 

 In your view, under this past practice you’ve described, would it be consistent with this past practice or would it be inappropriate for a Battalion Chief during the course of his 24-hour shift to stop over and engage in some private personal business for various periods of time during the period of time he was in uniform and on duty?
 

 THE WITNESS: That would not have been inappropriate, that was consistent with the practice.
 

 [2]
 

 During oral argument, counsel for Reno noted that Reno “to this day” does not know exactly what was allowed during “free time.” As noted previously, former Fire Chief Turner validated McVickers’ personal business activities as being within the practices that had been countenanced by the Department over the years. We suggest that Reno may be well advised to insist that permissible free time activities be carefully defined so that all will understand that which is or is not allowable. It would appear to us that clearer definition regarding time, space, and activity involved in the use of “free time” would minimize the prospects for the instant type of disciplinary action involving a twenty-year veteran with a previously unblemished record.
 

 [3]
 

 The arbitrator found the following allegations unproven: (1) that McVickers attended a business meeting in uniform; (2) that McVickers used the Department to purchase supplies; (3) that McVickers had driven a business associate to a fire and acted as a spectator while at the fire; (4) that McVickers had made an alleged racial remark, purporting to put a black fire fighter “on point” or in the line of fire; and (5) that McVickers had used Department property or the City of Reno’s logo without authorization.