ASSOCIATION OF CLEVELAND FIRE FIGHTERS, LOCAL 93 OF THE INTERNATIONAL ASSOCIATION OF FIRE FIGHTERS, APPELLANT AND CROSS-APPELLEE, *v.* CITY OF CLEVELAND, APPELLEE AND CROSS-APPELLANT.

[Cite as *Assn. of Cleveland Fire Fighters, Local 93 of the Internatl. Assn. of Fire Fighters v. Cleveland,* 99 Ohio St.3d 476, 2003-Ohio-4278.]

(No. 2002–0612—Submitted March 25, 2003—Decided August 27, 2003.)

**O'CONNOR, J.**

{¶ 1} This case arises from a grievance filed by the Association of Cleveland Fire Fighters, Local 93 of the International Association of Fire Fighters. The union seeks to end the city of Cleveland's practice of temporarily rescheduling fire fighters' work shifts, a practice that has become known as "arrowing."

### Facts and Procedural History

{¶ 2} Under the collective bargaining agreement ("CBA") between the union and the city, the union fire fighters annually select one of three 24–hour shifts, designated as A, B, and C, followed by 48 hours off work. The fire fighters also have an additional 24–hour shift off every third week, and an extra 24–hour shift off every ninth week. The result of the additional days off makes their average time worked 45.33 hours per week over a nine-week period.

{¶ 3} Arrowing began in the 1960s, before the city and the fire fighters had a collective bargaining agreement. Arrowing was purportedly introduced to balance manpower across various shifts. The term derived from drawing an arrow on the company's schedule from one shift to a different shift to show the shift change for a given day. Arrowing a shift changes the usual 48 hours off before and after a fire fighter's shift. Instead, the fire fighter receives only 24 hours off before the arrowed shift and 72 hours off after the arrowed shift, or, vice versa, 72 hours off before and only 24 hours off after. The fire fighters receive regular pay for arrowed shifts.

{¶ 4} The first CBA between the parties was executed in 1977 and was silent as to arrowing. The CBA has been renegotiated every three years. Although arrowing has never explicitly been addressed in a CBA between the parties, in response to language added to the CBA by the city in 1989 that may have been

construed to permit arrowing, the union attempted to negotiate the prohibition of arrowing in the 1992, 1995, and 1998 agreements.

{¶ 5} The dispute culminated with the union filing a grievance in 1999, protesting the city's practice of arrowing. The arbitrator determined that the CBA permitted arrowing and that arrowing was a binding past practice of the parties.

{¶ 6} The Cuyahoga County Court of Common Pleas vacated the arbitrator's decision in a judgment entry without opinion, ordering that arrowing was to immediately cease. The court also scheduled a hearing regarding the union's request for compensation.

{¶ 7} The Eighth District Court of Appeals affirmed in part and reversed in part. The court upheld the common pleas court's vacation of the arbitrator's decision, but also reversed that part of the decision ordering the city to cease arrowing and scheduling a hearing regarding compensation for the affected fire fighters. The court reasoned that the common pleas court erred because it was limited to vacating the arbitrator's award and restoring the parties to their positions prior to the vacated order. The court held that the terms of the CBA did not authorize arrowing, but significantly, the court did not hold that the CBA actually prohibits arrowing.

{¶ 8} Determining that the appellate court's opinion still left open the possibility of future arbitration and litigation of the issue and that an arbitrator could later find that the CBA did not prohibit arrowing, the union brought this appeal. The city cross-appealed, asking that the arbitrator's decision be reinstated.

## Analysis

{¶ 9} The union argues that arrowing violates the express terms of the CBA. We agree. Given the confused procedural posture of this case, we conclude that the proper disposition is a vacation of the arbitrator's award, which in effect affirms in part and reverses in part the appellate court's decision. We examine parts of both the arbitrator's and appellate court's decisions below.

{¶ 10} The arbitrator focused primarily on two sections of the CBA in deciding that the CBA permitted arrowing. The arbitrator determined that Article VIII, entitled "Hours of Duty," standing alone would prohibit arrowing. That section of the CBA states that "the normal work week shall consist of one (1) twenty-four (24) consecutive hour shift, followed by forty-eight (48) consecutive hours off work with an additional twenty-four (24) consecutive hours off work once every three (3) weeks so that no person shall average more than forty-eight (48) hours per week within said three (3) week period."

{¶ 11} However, the arbitrator went on to find that when Article VIII is read in conjunction with Article V, "Seniority," arrowing is actually authorized by the

CBA. Article V reads in part, "A shift selection within the Union [sic, 'Unit'?] or Battalion may be changed by a Company, Unit Commander or Battalion Commander where a discipline or morale problem must be solved, or for efficient operation of the Unit or Battalion." The arbitrator interpreted Article V to allow the changing of a single day's shift, rather than simply allowing management to permanently change a fire fighter's annual shift selection. The arbitrator concluded that the two articles read in conjunction allowed arrowing.

{¶ 12} R.C. 2711.10 provides, "In any of the following cases, the court of common pleas shall make an order vacating the award upon the application of any party to the arbitration if * * * (D) [t]he arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."

{¶ 13} The public policy favoring arbitration requires that courts have only limited authority to vacate an arbitrator's award. *Mahoning Cty. Bd. of Mental Retardation & Developmental Disabilities v. Mahoning Cty. TMR Edn. Assn.* (1986), 22 Ohio St.3d 80, 84, 22 OBR 95, 488 N.E.2d 872. Accordingly, we have held that a reviewing court is limited to determining whether the award draws its essence from the CBA and whether the award is unlawful, arbitrary, or capricious. *Findlay City School Dist. Bd. of Edn. v. Findlay Edn. Assn.* (1990), 49 Ohio St.3d 129, 551 N.E.2d 186, paragraph two of the syllabus. "An arbitrator's award draws its essence from a collective bargaining agreement when there is a rational nexus between the agreement and the award, and where the award is not arbitrary, capricious or unlawful." *Mahoning,* supra, paragraph one of the syllabus.

{¶ 14} The union argues that the arbitrator's decision does not draw its essence from the CBA. The city points to the phrase "for efficient operation of the Unit or Battalion" in Article V to argue that the CBA permits arrowing. However, we are persuaded by the appellate court's conclusion that the language in Article V refers to changes in the overall shift selection for the year, imposed after employees have selected one of the A, B, or C shifts on a seniority basis. The article is entitled "Seniority" and obviously does not refer to the temporary day-by-day changing of shifts to balance manpower levels. The plain language of the CBA clearly does not allow arrowing. Accordingly, the common pleas court and appellate court did not err in finding that the arbitrator exceeded his powers, because his award did not draw its essence from the CBA.

{¶ 15} The arbitrator also concluded that arrowing is a binding past practice, "established and recognized by both parties * * * practiced openly and notoriously for more than 30 years." However, arrowing cannot be interpreted as a binding past practice because of the union's continuing vehement fight against its use.

{¶ 16} Other states have contemplated the factors required for a past practice to be binding. The predominant definition, and the one used by both the arbitrator and the union, requires that to be binding on parties to a collective bargaining agreement, a past practice must be (1) unequivocal, (2) clearly enunciated, and (3) followed for a reasonable period of time as a fixed and established practice accepted by both parties. *Celanese Corp. of Am.* (1954), 24 Labor Arb. Reports 168, 172.[1] We think this a sound and logical test, and hereby adopt it.

{¶ 17} Under this newly adopted test, it is clear that arrowing cannot be considered a binding past practice, because the union did not accept the practice. The facts in the record are inadequate to properly examine the first two prongs of the test. The arbitrator merely summarily stated that the practice was "unequivocal and clearly enunciated and acted upon." The arbitrator's opinion provides no further assessment of those issues.

{¶ 18} An examination of the first two prongs of the test is unnecessary, however, because there is ample evidence to adequately address the third prong. The third prong of the test requires that the practice be followed for a reasonable period of time as a fixed and established practice *accepted by both parties.* The city argues that the union in effect agreed to the practice because it failed to file a grievance for over 20 years. Nevertheless, filing a grievance is not the only vehicle for disagreement for the union. The union repeatedly attempted to negotiate language into CBAs to prohibit the practice or remove language that may have been construed to support the practice, so that the CBA would clearly and indisputably prohibit the further use of arrowing by the city. The history of the negotiations on this issue sufficiently demonstrates the union's complete lack of acceptance of arrowing.

{¶ 19} The union also asks us to close the loophole created by the appellate court's caveat that "[t]his is not, however, a determination that the CBA prohibits arrowing" and to hold that the CBA expressly prohibits arrowing. Given our discussion above, we conclude that arrowing expressly violates the CBA. There is no question that arrowing violates the Article VIII requirement that fire fighters' hours of duty follow a 24–hour–on and 48–hour–off schedule because it results in fire fighters having only 24 hours off between work days. Because we have also

---

1. See, also, *Riverside Sheriff's Assn. v. Cty. of Riverside* (2003), 106 Cal.App.4th 1285, 1291, 131 Cal.Rptr.2d 454; *Mass. Corr. Officers Federated Union v. Sheriff of Bristol Cty.* (2002), 55 Mass.App.Ct. 285, 291, 770 N.E.2d 528, citing Elkouri & Elkouri, How Arbitration Works (5th Ed.1997) 632; *Reno v. Reno Fire Dept.* (1995), 111 Nev. 1004, 1009–1010, 899 P.2d 1115; *Seton Co. v. Unemployment Comp. Bd. of Review* (Pa.Commw.1995), 663 A.2d 296, 299; *Oshkosh Paraprofessional Edn. Assn. v. Oshkosh Area School Dist.* (1995), 198 Wis.2d 388, 542 N.W.2d 238 (unpublished disposition; opinion at 1995 WL 702403).

examined and rejected the theory that arrowing is a binding past practice, we see no other avenue by which an argument may be made that arrowing is permissible. Therefore, we hold that arrowing violates the CBA.

{¶ 20} Finally, the union asserts that the appellate court erred in determining that the trial court exceeded its authority in granting a cease-and-desist order and scheduling a hearing for determination of compensation for affected fire fighters. The appellate court correctly examined the judge's statutory authority to vacate and modify an arbitrator's award pursuant to R.C. 2711.10 and 2711.11. R.C. 2711.10 limits a common pleas judge's authority to vacate an arbitrator's award to certain specified circumstances.[2] R.C. 2711.11 allows for modification or correction of an award under different circumstances that do not apply to this case.[3] We therefore affirm the appellate court's decision on this issue. The parties may continue arbitration on the issue of compensation for affected fire fighters.

Judgment affirmed in part<br>and reversed in part.

MOYER, C.J., RESNICK, F.E. SWEENEY and PFEIFER, JJ., concur.

GRENDELL and LUNDBERG STRATTON, JJ., concur in part and dissent in part.

DIANE V. GRENDELL, J., of the Eleventh Appellate District, J., sitting for COOK, J.

---

**GRENDELL, J., concurring in part and dissenting in part.**

{¶ 21} I concur in the portion of the majority's decision (1) holding that "arrowing" is not specifically permitted as an express contractual term of the collective bargaining agreement ("CBA") and (2) affirming the appellate court's

---

2. R.C. 2711.10 reads, "In any of the following cases, the court of common pleas shall make an order vacating the award upon the application of any party to the arbitration if * * * (D) [t]he arbitrators exceeded their powers * * *."

3. {¶ a} R.C. 2711.11 reads:

{¶ b} "In any of the following cases, the court of common pleas in the county wherein an award was made in an arbitration proceeding shall make an order modifying or correcting the award upon the application of any party to the arbitration if:

{¶ c} "(A) There was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award;

{¶ d} "(B) The arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matters submitted;

{¶ e} "(C) The award is imperfect in matter of form not affecting the merits of the controversy.

{¶ f} "The order shall modify and correct the award, so as to effect the intent thereof and promote justice between the parties."

ruling that the trial court did not have legal authority to issue a cease-and-desist order. However, I respectfully dissent from the majority's erroneous rulings that (1) arrowing is not an established past practice and (2) arrowing violates the CBA. The record unequivocally demonstrates that arrowing has been a long-established past practice that predated the CBA and continued for 15 years thereafter without objection by the union and for 22 years without a grievance being filed—despite the numerous renegotiations of the CBA prior to 1992. Moreover, even if arrowing was not an established past practice, I agree with the appellate court below that arrowing is permitted pursuant to the city's reservation of rights under Article II of the CBA and pursuant to R.C. 4117.08 and 4117.10(A). In either event, the portions of the arbitrator's award denying the grievance concerning that practice and determining that arrowing does not violate the CBA draw their essence from the CBA and are not unlawful, arbitrary, or capricious.

{¶ 22} The majority correctly notes that arrowing began in the 1960s, that the parties entered into collective bargaining agreements every three years from 1977 to 1992, and that the union did not attempt to prohibit or limit the practice of arrowing in the CBA until 1992. The union did not file a grievance protesting the city's practice of arrowing until 1999—more than 30 years after the practice began and 22 years after the parties executed the first CBA.

{¶ 23} I agree with the majority that the express language in the CBA does not specifically allow arrowing.[4] Additionally, I agree with the majority and the appellate court that Article V of the CBA is limited to the issue of seniority and does not expressly permit arrowing, as argued by the city.

{¶ 24} Resolution of this case, however, hinges on the issue of past practices. The city argues that the union in effect agreed to the practice of arrowing by its inaction for a substantial period of time. The history of the parties' practices supports this argument.

{¶ 25} When a collective bargaining agreement is silent as to a work-scheduling practice, management's past practice is an acceptable way of addressing the issue. *Ingersoll–Rand* (2003), 118 Labor Arb. Reports 275 (Goldstein, Arb.); *Bonnell/Tredegar Industries, Inc. v. Natl. Labor Relations Bd.* (C.A.4, 1995), 46 F.3d 339, 344 ("An employer's established past practice can become an implied term of a collective bargaining agreement"); *Celanese Corp. of Am.* (1954), 24 Labor Arb. Reports 168 (Justin, Arb.); Mittenthal, Past Practice and the Administration of Collective Bargaining Agreements (1961), 59 Mich.L.Rev. 1017.

---

4. The city argues that the practice of arrowing was a practice affecting "hours of work" at the time Section (B)(7), Article IX of the CBA was negotiated. However, Article IX deals with vacations, not overtime or shift changes.

{¶ 26} As Justice Douglas, speaking for the United States Supreme Court majority in *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.* (1960), 363 U.S. 574, 581–582, 80 S.Ct. 1347, 4 L.Ed.2d 1409, stated, "The labor arbitrator's source of law is not confined to the express provisions of the contract, as the industrial common law—the practices of the industry and the shop—is equally a part of the collective bargaining agreement although not expressed in it." See, also, *Jackson Purchase Rural Elec. Coop. Assn. v. Local Union 816, Internatl. Bhd. of Elec. Workers* (C.A.6, 1981), 646 F.2d 264, 268, citing *Detroit Coil Co. v. Internatl. Assn. of Machinists & Aerospace Workers, Lodge 82* (C.A.6, 1979), 594 F.2d 575, 579 ("An arbitrator may properly incorporate the past practices of the parties or the 'common law of the shop' into the written collective bargaining agreement where that document is silent or ambiguous on a matter"). This case must be analyzed in that context.

{¶ 27} I agree with the majority that Ohio should adopt the three-prong test for determining the existence of a past practice in labor cases promulgated in *Celanese*, supra, 24 Labor Arb. Reports at 172.[5]  Under *Celanese*, a past practice must be (1) unequivocal, (2) clearly enunciated, and (3) followed for a reasonable period of time as a fixed and established practice accepted by both parties.

{¶ 28} It is the application of the *Celanese* past-practice test to the facts in this case that causes me to part company with the majority.

{¶ 29} The majority finds the arbitrator's opinion that the practice of arrowing was "unequivocal and clearly enunciated and acted upon" deficient because that opinion "provides no further assessment of those issues."  But no further assessment of those issues is necessary.  Arbitrator O'Connell correctly noted: "The Association's contention that there is no set standard policy overlooks the point that the practice is simple and easily recognized on its face.  Moreover, arrowing is established and recognized by both parties.  It has been practiced openly and notoriously for more than 30 years."  The practice of arrowing between the city and fire fighters began in the 1960s and has been consistently and repetitively[6] applied without challenge at least until 1992 and without the filing of a grievance until 1999.  The nature of that practice is not genuinely in

---

5.  See, also, *Arkansas Power & Light Co.* (1980), 81–1 Labor Arb. Awards ¶ 8039, 3178, 3181 (Sisk, Arb.); *Pacific S.W. Airlines* (1983), 83–2 Labor Arb. Awards ¶ 8474, 5111, 5113 (Richman, Arb.).

6.  The standards for determining the existence of a past practice have also been stated as including consistency (an ongoing application without numerous exceptions or contradictions) and repetition (application over a period of time from which a consistent pattern of behavior emerges).  Hill & Sinicropi, Management Rights: A Legal and Arbitral Analysis (1986) 23, citing Mittenthal, Past Practice and the Administration of Collective Bargaining Agreements, Proceedings of the 14th Annual Meeting of NAA (BNA 1961) 32–33, also printed in (1961) 59 Mich.L.Rev. 1017, 1019.  The city's practice of arrowing satisfies both the consistency and repetition standards.

dispute, and there is no credible evidence in the record that the parties had any real uncertainty as to what constituted arrowing. Likewise, the city's practice of arrowing had been openly enunciated and followed for over 30 years. Therefore, the first two prongs of the *Celanese* past-practice test have been satisfied in this case and are established by the record.

{¶ 30} Under the third prong of the *Celanese* past-practice test, the practice must be (i) followed for a reasonable period of time (ii) as a fixed and established practice (iii) accepted by both parties. *Celanese,* supra, 24 Labor Arb. Reports at 172. In this case, arrowing has remained a fixed and established practice, unchallenged for 15 years after the first CBA. Arrowing existed for 30 years before the union filed its grievance. Such an extended period is more than a reasonable period of time. See, e.g., *Detroit* (1992), 99 Labor Arb. Reports 326, 328 (Kanner, Arb.) (four-year-old past practice recognized).

{¶ 31} Only the question of acceptance remains for analysis.

{¶ 32} An express agreement between the parties is *not* necessary to prove acceptance of a past practice. *Bethlehem Steel Co.* (1959), 33 Labor Arb. Reports 374 (Valtin, Arb.).

{¶ 33} When evidence demonstrates that the parties had knowledge of a particular course of conduct, agreement may be *implied* when there is a continued failure on the part of one party to object to the other's activity. *Willys Motors, Inc.* (1954), 22 Labor Arb. Reports 289 (Allen, Arb.).

{¶ 34} The majority concludes that "[t]he history of the negotiations on this issue sufficiently demonstrates the union's complete lack of acceptance of arrowing." I disagree with this erroneous conclusion.

{¶ 35} The history of this issue unequivocally demonstrates the fire fighters' and their union's acceptance of arrowing as a practice for at least 15 years. From the 1960s to 1977, Cleveland's fire fighters lived with arrowing as part of the work-scheduling process. There is no evidence that the union objected to the then-established practice of arrowing when the union negotiated the first CBA in 1977. There is no evidence that the union objected to the practice of arrowing or sought to prohibit or limit that practice from 1977 to 1992, even though the CBA was renegotiated every three years during that period. In fact, the union did not attempt to negotiate a prohibition or limitation of the practice of arrowing until 1992—decades after the practice began and 15 years after the first CBA with the union.

{¶ 36} Silence as to a past practice during subsequent collective bargaining, absent the clear manifestation of a contrary intention, evidences acceptance of that practice. See Cox & Dunlop, The Duty to Bargain Collectively During the Term of an Existing Agreement (1950), 63 Harv.L.Rev. 1097, 1116–1117. The

best summary of this principle is provided by arbitrator Samuel Chalfie: "A collective bargaining agreement is not negotiated in a vacuum. Rather it is negotiated in a setting of past practices and prior agreements. It may be reasonably assumed that the parties, in shaping bargaining demands as to wages and employee benefits, do so with silent recognition of existing unwritten benefits and working conditions." *Diamond Natl. Corp.* (1969), 52 Labor Arb. Reports 33, 35 (Chalfie, Arb.).[7] These past practices essentially constitute the "industrial common law." *United Steelworkers,* supra, 363 U.S. at 581–582, 80 S.Ct. 1347, 4 L.Ed.2d 1409.

{¶ 37} Additionally, a union's failure to file a grievance may be construed as acceptance of a past practice. Hill & Sinicropi, Management Rights: A Legal and Arbitral Analysis (1986) 34–36; *Eltra Corp.* (1981), 76 Labor Arb. Reports 62, 68 (Raymond, Arb.); *Associated Wholesale Grocers, Inc.* (1982), 82–1 Labor Arb. Awards ¶ 8240, 4098 (Mikrut, Arb.). The reasoning behind this principle has been expressed as follows: " 'It is generally accepted that actual practice, if continued without protest over a substantial period of time, is compelling evidence of intent. * * * Having expressed no objections to the practice, the Union has in effect accepted the interpretation [of the employer].' Willys Motors, Inc., 22 LA 289 (1954)."[8] *Port Drum Co.* (1984), 82 Labor Arb. Reports 942, 944–945 (Holman, Arb.).

{¶ 38} In addition to waiting 15 years to attempt to negotiate a prohibition of or limitation on arrowing, the union waited yet another seven years before it filed its grievance challenging arrowing in this case. The union's inaction during those extended periods evidences acceptance of the practice of arrowing long *before* the

---

7. See, also, *Eau Claire Cty.* (1981), 76 Labor Arb. Reports 333, 335 (McCrary, Arb.) ("the parties will be presumed to have been aware of the instant practice as bargaining for the current agreement took place in the context of the practice. In addition, due to the parties' awareness of the instant practice and the County's failure to repudiate the practice during the negotiations, it is reasonable to conclude that the parties intended for the practice to continue in force").

8. Likewise, arbitrator Marvin Feldman, in *Teledyne Monarch Rubber* (1980), 75 Labor Arb. Reports 963, ruled that management had the right to assign management personnel to reset microprocessor equipment where in the past the union failed to challenge that practice by grievance. His reasoning is particularly instructive: "It might be further noted that the bargaining unit had never grieved for such work during their entire course of bargaining history at the facility, which dates back some eight years at the time of hearing and which had been accomplished, according to Company testimony, over a thousand times by management personnel. Thus it appears that the bargaining unit, while it may choose to police the contract of collective bargaining as it sees fit from time to time, cannot waive a right forever and then attempt to grieve one workload when the workload has been accomplished a thousand times at least prior without protest. * * * [F]ailure of the bargaining unit to protest such activity as it was occasioned throughout the course of years at the facility leads this arbitrator to believe that as a matter of fact the bargaining unit realized over that period of years that they as a matter of fact had no right to the workload which is grieved in this particular matter at this particular time." Id. at 965.

union belatedly attempted to challenge arrowing. Indeed, if the union had demonstrated a "complete lack of acceptance of arrowing," as found by the majority, and if the CBA prohibits arrowing, as the majority holds, there would have been no need for the union to seek to negotiate a prohibition against arrowing during the CBA negotiations in 1992, 1995, and 1998. If the union really believed that arrowing was not an accepted past practice or was a prohibited practice in 1992 (or before that date), all the union had to do was file a grievance. The union's decision to pursue this issue by negotiations, not grievance, at that time, speaks volumes, especially given the obvious sophistication of the union and its experienced legal counsel.

{¶ 39} The union's failure to object to the practice of arrowing for 15 years and its failure to file a grievance for 22 years are more than ample evidence of the union's acceptance of arrowing as a past practice for purposes of the third prong of the *Celanese* test.

{¶ 40} Since arrowing satisfies all of the requirements for a past practice under the *Celanese* test adopted by the majority, the city's practice of arrowing constitutes an accepted past practice in this case. Under Article II of the CBA and pursuant to R.C. 4117.08 and R.C. 4117.10(A), arrowing, as an established past practice, does not violate the CBA. The arbitrator's award to that effect draws its essence from the CBA and is not unlawful, arbitrary, or capricious. *Findlay City School Dist. Bd. of Edn. v. Findlay Edn. Assn.* (1990), 49 Ohio St.3d 129, 551 N.E.2d 186.

{¶ 41} However, as correctly determined by the majority and the appellate court, the CBA does not specifically authorize arrowing. The arbitrator's decision that it does authorize arrowing exceeded his authority. The trial court could properly vacate the arbitrator's ruling for correction of that specific error.

{¶ 42} Because arrowing is an accepted and permitted past practice, there is no loophole to close by holding, as the majority does, that the CBA expressly prohibits arrowing. Arrowing is neither authorized nor prohibited by the CBA. Arrowing is permitted as a recognized long-standing past practice.

{¶ 43} Any change or limitation to the past practice of arrowing should come through collective bargaining, not judicial fiat. Indeed, the judicial activism of the majority threatens the United States Supreme Court's long-recognized "industrial common law" in Ohio and ultimately may be detrimental to the protection of Ohio's union workers in the future. The majority's approach—that a long-standing past practice may be unilaterally nullified merely by one party's belated attempt to prohibit or limit that practice during later collective bargaining—establishes a dangerous precedent that could haunt Ohio's union workers by leading to the nullification of past practices that protect union workers. The past-practice doctrine has been successfully employed by union workers to

protect their rights. See, e.g., *Weston Paper & Mfg. Co.* (1981), 76 Labor Arb. Reports 1273 (Bowles, Arb.) (union established a consistent past practice entitled to protection); *Printing Industry of Metro. Washington, D.C.* (1981), 77 Labor Arb. Reports 911 (Epstein, Arb.).

{¶ 44} Some of the matters which arbitrators have held to be the subject of a binding past practice include attending to personal matters during shift,[9] funeral leave,[10] severance pay,[11] maternity leave,[12] wash-up time,[13] crew sizes,[14] coffee breaks,[15] lunch periods,[16] shift preferences,[17] seniority of foremen,[18] jury duty pay,[19] payment of union officials for time spent at arbitration hearings,[20] and holiday pay for Saturdays.[21]

{¶ 45} Long-established past-practice rights of Ohio's union workers will now be exposed to the dangers of future judicial nullification, instead of collective bargaining. Such judicial intervention unilaterally changes the parties' bargaining position, which can work to the detriment of union workers in future past-practice cases. All management will have to do now to satisfy the majority's lack-of-acceptance test is seek to negotiate a prohibition or limitation of an established past practice beneficial to workers during the next collective bargaining process. Simply put, if an established past practice that continued for 15 years without objection and 22 years without grievance can be judicially eviscer-

9.  *Reno v. Reno Fire Dept. Adm. Assn.* (1995), 111 Nev. 1004, 899 P.2d 1115.

10. *Commercial Motor Freight, Inc.* (1960), 34 Labor Arb. Reports 592 (Stouffer, Arb.).

11. *Jacob Ruppert* (1960), 35 Labor Arb. Reports 503 (Turkus, Arb.).

12. *Northland Greyhound Lines, Inc.* (1954), 23 Labor Arb. Reports 277 (Levinson, Arb.).

13. *Goodyear Tire & Rubber Co.* (1960), 35 Labor Arb. Reports 929 (Killingsworth, Arb.); *Internatl. Harvester Co.* (1953), 20 Labor Arb. Reports 276 (Wirtz, Arb.).

14. *Southwest Steel Corp.* (1962), 38 Labor Arb. Reports 344 (Duff, Arb.); *United States Steel Corp.* (1959), 33 Labor Arb. Reports 394 (Garrett, Arb.).

15. *Cushmans Sons, Inc.* (1961), 37 Labor Arb. Reports 381 (Scheiber, Arb.); *Ingalls Iron Works Co., Inc.* (1959), 32 Labor Arb. Reports 960 (Reid, Arb.).

16. *Dayton Steel Foundry Co.* (1958), 30 Labor Arb. Reports 35 (Wagner, Arb.); *E.W. Bliss Co.* (1955), 24 Labor Arb. Reports 614 (Dworkin, Arb.).

17. *Internatl. Minerals & Chem. Corp.* (1960), 36 Labor Arb. Reports 92 (Sanders, Arb.).

18. *Borg–Warner Corp.* (1961), 36 Labor Arb. Reports 691 (Mishne, Arb.).

19. *Kelsey–Hayes Co.* (1961), 37 Labor Arb. Reports 375 (Gill, Arb.).

20. *Gen. Controls Co.* (1958), 31 Labor Arb. Reports 240 (Jones, Arb.).

21. *Am. Can Co.* (1959), 33 Labor Arb. Reports 809 (Bothwell, Arb.).

ated in this case, how can any other established past practice expect to survive judicial extermination? That is why modification or termination of accepted and long-established past practices is best left to the collective bargaining process, as correctly noted by the appellate court below in this case.

{¶ 46} Even assuming arguendo that arrowing is not an established past practice in this case (which it is), the appellate court below was correct in ruling that the practice (1) is not expressly prohibited or limited by the CBA, (2) does not violate any state or local laws, and (3) is consistent with the city's reservation of rights under Article II of the CBA. Therefore, the city has the right to engage in arrowing under the facts before this court. R.C. 4117.08 and 4117.10(A).

{¶ 47} For the reasons stated above, I would (1) affirm the arbitrator's decision denying the grievance and the portion of the appellate court's ruling consistent therewith, (2) affirm the appellate court's ruling that the CBA does not expressly permit arrowing and vacating the arbitrator's award as to that specific issue, (3) affirm the appellate court's ruling that the trial court did not have legal authority to issue a cease-and-desist order, and (4) reverse the remaining lower court's rulings to the extent inconsistent herewith.

LUNDBERG STRATTON, J., concurs in the foregoing opinion.

---

Joseph W. Diemert Jr. & Associates Co., L.P.A., Joseph W. Diemert Jr., Thomas M. Hanculak and Jeffrey J. Sokolowski, for appellant and cross-appellee.

Duvin, Cahn & Hutton and Jon M. Dileno, for appellee and cross-appellant.