[Cite as *State v. Ohio Civil Serv. Emps. Assn., Local 11 AFSCME AFL-CIO*, 2016-Ohio-5899.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | No. 14AP-906 |
| | | (C.P.C. No. 13CV-12811) |
| v. | : | |
| | | (ACCELERATED CALENDAR) |
| Ohio Civil Service Employees | : | |
| Association, Local 11 AFSCME | | |
| AFL-CIO | : | |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on September 20, 2016

**On brief:** *Michael DeWine*, Attorney General, and *Robert E. Fekete*, for appellee. **Argued:** *Robert E. Fekete*.

**On brief:** *Thomas B. Cochrane*, *Jessica R. Doogan,* and *Sandra F. Bell* for appellant. **Argued:** *Thomas B. Cochrane*.

APPEAL from the Franklin County Court of Common Pleas

BRUNNER, J.

{¶ 1} Defendant-appellant, Ohio Civil Service Employees Association, Local 11 AFSCME AFL-CIO ("the Union"), appeals from a decision of the Franklin County Court of Common Pleas filed on October 30, 2014, which granted summary judgment to plaintiff-appellee, State of Ohio, and effectively reversed the decision of an arbitrator in favor of the Union. For the following reasons, we reverse.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} The Adjutant General's Department of the State of Ohio employs a number of firefighters who work at military bases in Ohio and are members of the Union. The relationship between these firefighters and their employer is governed by a collective bargaining agreement ("CBA"). The relevant version of the CBA for this case governed the period from March 1, 2012 through February 28, 2015. That CBA requires the employer

No. 14AP-906

to pay firefighters up to a maximum of seventeen 24-hour days (408 hours) annually of military leave time.

{¶ 3} Prior to and until March 9, 2012, firefighters who requested military leave with pay were granted leave equal to the time they requested. However, this practice was discontinued by an e-mail from the human resources administrator of the Adjutant General's Department at 12:32 p.m. on March 9, 2012. According to the e-mail, the Adjutant General's Department would henceforth require a copy of the military order or letter specifying the start and end dates and times of military duty. While the agency would still "release an employee for travel and rest time" in compliance with federal law, it would not pay unless the employee was acting in a " 'military service' capacity" which it defined as the "time specified on the orders or commander letter." (Nov. 22, 2013 Compl. at Ex. C.)

{¶ 4} On March 19, 2012, the firefighters filed a grievance based on the fact that the Adjutant General's Department had reversed past practice and refused paid military leave to which the firefighters alleged they were entitled under the CBA. The employer issued a "Step 3 Grievance Decision" shortly after the grievance was filed.[1] (Compl. at Ex. F.) The employer's decision took the position that paid military leave under the CBA did not include travel to and from military assignments or rest periods following such assignments.

{¶ 5} The parties arbitrated the dispute, and as part of that process, a hearing was held on July 9, 2013. At the hearing, four firefighters testified on behalf of the Union as to the past practices of the parties in interpreting the CBA. According to the summary prepared by the arbitrator,[2] firefighters testified that before the time of the e-mail in 2012, they routinely claimed and received paid military leave time for travel to and from military assignments. The human resources administrator who sent the e-mail changing the policy, admitted that, before the time of her e-mail, if military leave was requested it was paid. She also expressed concern that the program had improperly been paying and might not receive federal funds sufficient to cover military leave if that concept included travel and rest. In addition, one witness testified as to a survey of practices on military

---

[1] This document is incorrectly dated "11 June 2011." (Compl. at Ex. F.) We assume, given that the grievance was filed in March 2012 and that the decision document reflects that the meeting underlying the decision was held on April 26, 2012, that the year is incorrectly given.

[2] Transcripts of this hearing were not submitted to the trial court and are not before this Court.

No. 14AP-906

leave at a variety of state agencies (with the result that some agencies pay for rest and travel time and some do not). Finally, the State Judge Advocate testified about the laws and regulations governing the military, stating that rest and travel are not considered "Duty" by the military or the Department of Defense and are not covered by federal funding. (Aug. 26, 2014 Pl.'s Mot. for Summ. Jgmt. Ex. A at 10.)

{¶ 6} In a decision issued on August 26, 2013, the arbitrator concluded that, as the CBA is not silent on the topic of military leave, the topic was arbitrable. The arbitrator then factually found an "undisputed" and "long standing practice of paying for travel and rest as a Military Leave benefit." (Pl.'s Mot. for Summ. Jgmt. Ex. A at 19.) He explained that, although the federal government does not consider travel and rest to be a payable part of "Inactive Duty for Training" the CBA uses the term "military leave" rather than "Inactive Duty for Training" and is capable of granting greater rights than provided by federal or state law. In addition, the arbitrator noted that the CBA (which covers many types of employees) specifically recognizes the unique 24-hour schedule of firefighters and grants them additional military leave to accommodate that schedule. The arbitrator concluded that the grievance should have been granted and the new military leave policy reversed.

{¶ 7} On November 22, 2013, the State filed an application to vacate the arbitration award with the trial court. The Union answered on December 4, 2013. Both parties then moved for summary judgment on August 29, 2014, based on the arbitration decision, as well as stipulations and exhibits presented during the arbitration. Following briefing, the trial court rendered a decision on October 30, 2014. The trial court reasoned that "military leave" is not defined in the CBA and that the arbitrator had exceeded his authority by construing the term. Thereby, the trial court concluded that the matter was not arbitrable and reversed the arbitrator's decision that overturned the State's new policy.

{¶ 8} The Union now appeals.

## II. ASSIGNMENTS OF ERROR

{¶ 9} The Union presents two assignments of error for review:

> [1.] The court below exceeded its scope of review by substituting its interpretation of a term in the parties' CBA for the arbitrator's.

No. 14AP-906

> [2.] The court below erred by ruling the matter was inarbitrable because the arbitrator rejected the state's interpretation of "military leave."

Because the arguments regarding these assignments of error are interrelated, we discuss them together.

## III. DISCUSSION

{¶ 10} Civ. R. 56(C) states:

> Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

The Supreme Court of Ohio has explained:

> Summary judgment will be granted only when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C); *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 Ohio Op. 3d 466, 364 N.E.2d 267. The burden of showing that no genuine issue of material fact exists falls upon the party who files for summary judgment. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 294, 1996 Ohio 107, 662 N.E.2d 264.

Byrd v. Smith, 110 Ohio St.3d 24, 2006-Ohio-3455, ¶ 10; see also, e.g., Esber Beverage Co. v. Labatt United States Operating Co., L.L.C., 138 Ohio St.3d 71, 2013-Ohio-4544, ¶ 9.

{¶ 11} In deciding summary judgment, the trial court must give the nonmoving party "the benefit of all favorable inferences when evidence is reviewed for the existence of genuine issues of material facts." *Byrd* at ¶ 25. When reviewing a trial court's decision on summary judgment, our review is de novo, and we therefore apply the same standards as the trial court. *Westfield Ins. Co. v. Hunter*, 128 Ohio St.3d 540, 2011-Ohio-1818, ¶ 12; *Bonacorsi v. Wheeling & Lake Erie Ry.*, 95 Ohio St.3d 314, 2002-Ohio-2220, ¶ 24.

{¶ 12} In addition, the laws concerning arbitration must guide our review. Ohio has a strong and well-established public policy favoring arbitration. *Schaefer v. Allstate Ins. Co.*, 63 Ohio St.3d 708, 711 (1992). Arbitration awards are presumed valid, and a reviewing court may not merely substitute its judgment for that of the arbitrator. *Bd. of*

No. 14AP-906

*Edn. of the Findlay City School Dist. v. Findlay Edn. Assn.*, 49 Ohio St.3d 129, 131-33 (1990). " '[J]udicial review of an arbitrator's decision is quite narrow.' " *Telle v. Estate of Soroka*, 10th Dist. No. 08AP-272, 2008-Ohio-4902, ¶ 9, quoting *MBNA Am. Bank, NA, v. Jones*, 10th Dist. No. 05AP-665, 2005-Ohio-6760, ¶ 10. A reviewing court must confirm an arbitration award if it finds that the arbitrator's award draws its essence from the underlying agreement and it is not unlawful, arbitrary, or capricious. *Reynoldsburg City School Dist. Bd. of Edn. v. Licking Heights Local School Dist. Bd. of Edn.*, 10th Dist. No. 11AP-173, 2011-Ohio-5063, ¶ 22, citing *Miami Twp. Bd. of Trustees v. Fraternal Order of Police, Ohio Labor Council, Inc.*, 81 Ohio St.3d 269 (1998), syllabus. "An arbitrator's award draws its essence from a collective bargaining agreement when there is a rational nexus between the agreement and the award, and where the award is not arbitrary, capricious or unlawful." *Mahoning Cty. Bd. of Mental Retardation & Dev. Disabilities v. Mahoning Cty. TMR Edn. Assn.*, 22 Ohio St.3d 80 (1986), paragraph one of the syllabus.

{¶ 13} Moreover, when a court of appeals reviews a trial court's judgment concerning an arbitration award, the appellate court must confine its review to evaluating the order issued by the trial court pursuant to R.C. Chapter 2711. The appellate court may not review substantive merits of the arbitrator's award in the absence of evidence of material mistake or extensive impropriety. *Reynoldsburg City School Dist. Bd. of Edn.* at ¶ 22, citing *Warren Edn. Assn. v. Warren City Bd. of Edn.*, 18 Ohio St.3d 170, 173 (1985). Under R.C. 2711.10, " 'even a grossly erroneous decision is binding in the absence of fraud.' " *Ohio Dept. of Adm. Servs. v. Moody/Nolan Ltd., Inc.*, 10th Dist. No. 00AP-336, (Dec. 12, 2000), quoting *Goodyear v. Tire & Rubber Co. Local Union No. 200, United Rubber Cork, Linoleum & Plastic Workers of Am.*, 42 Ohio St.2d 516, 522 (1975).

{¶ 14} In the case under review, the trial court explained its decision that the dispute was not arbitrable and that the arbitrator exceeded his authority, stating:

> This entire matter boils down to the conflux of several sections of the CBA. First, Section 25.03 of the CBA states:
>
> Only disputes involving the interpretation, application or alleged violation of a provision of the Agreement shall be subject to arbitration. The arbitrator shall have no power to add to, subtract from or modify any of the terms of the Agreement, nor shall he/she impose on either party a

No. 14AP-906

limitation or obligation not specifically required by the expressed language of this Agreement.

Next, Section 44.02 states:

To the extent that State statutes, regulations or rules promulgated pursuant to ORC Chapter 119 or appointing authority directives provide benefits to State employees in areas where this agreement is silent, such benefits shall be determined by those statutes, regulations, rules and directives.

Section 44.03 states:

This Agreement represents the entire agreement between the Employer and the Union unless specifically and expressly set forth in the express written provisions of this Agreement, all rules, regulations, practices and benefits previously and presently in effect, may be modified or discontinued at the sole discretion of the Employer. This Section alone shall not operate to void any existing or future Ohio Revised Code statutes or rules of the Ohio Administrative Code and applicable federal laws.

Next Section 30.02, pertaining to military leave, states that any permanent employee that is subject to state or federal military duty is entitled to military leave pay for up to 176 hours per calendar year. Finally, Appendix Q modifies Section 33.02 to state that the firefighters that are the subject to this case can receive compensation for up to 408 hours of military leave per year. It is with the above contract terms in mind that the Court must now render its decision.

While the lead up to the Court's decision is somewhat complex, the actual decision is quite simple. The Court must vacate the arbitrator's decision due to the fact that the definition of military leave is not subject to arbitration. The CBA specifically states that Defendant's members are entitled to receive compensation for military leave. The CBA, however, never once defines military leave. Since this is so, the definition of military leave falls into Section 44.02 of the CBA and must be defined by using appropriate statutes. The arbitrator exceeded his authority by finding that since the CBA allowed for compensation for military leave, the definition of military leave also is in the CBA. In fact, the CBA specifically states that when something is not defined by the CBA, statutes will be used to define it. If a statute is used to define something, then that definition is outside of the CBA

> and is therefore, not part of the CBA. This leads to the inevitable conclusion that the definition of military leave was not subject to arbitration under the CBA.

(Oct. 30, 2014 Decision & Entry at 5-6.)

{¶ 15} We find that the trial court erred in interpreting the provisions it quoted. Only if an agreement is "silent" about "areas" where regulations, directives, or laws, "provide benefits to State employees" does provision 44.02 operate to require that "such benefits shall be determined by [] statutes, regulations, rules or directives." (Compl. Ex. B at 158.) While it is true that the CBA did not define the term "military leave," that does not mean that military leave "benefits to State employees" constitute an "area[] where th[e] Agreement is silent" as contemplated in provision 44.02 of the CBA. (Compl. Ex. B at 158.) In fact, the CBA is not only not "silent" in the "area" of military leave benefits, it specifically sets forth the number of such paid hours to be made available to state employees generally and firefighters specifically. The trial court incorrectly concluded that military leave benefits are to be determined by law rather than the CBA and thereby incorrectly concluded that the matter was not arbitrable.

{¶ 16} In addition, while it is true that under the CBA the arbitrator may not "add to, subtract from or modify any of the terms of the Agreement," or "impose on either party a limitation or obligation not specifically required by the expressed language of this Agreement," an arbitrator may decide "disputes involving the *interpretation* * * * of a provision of the Agreement." (Emphasis added.) (Compl. Ex. B at 105.) The Supreme Court has remarked that in contract interpretation "words therein employed should be given their usual and ordinarily accepted meaning." *Kaplysh v. Takieddine*, 35 Ohio St.3d 170, 173 (1988). The Court has used standard dictionary definitions in such cases. *See Id.* (defining "licensed" and "expire" using Webster's Third New International Dictionary and Black's Law Dictionary).

{¶ 17} The term "military leave" is used in both the CBA and the Ohio Revised Code and is not defined in either. *See, e.g.*, R.C. 1713.60; 5923.05 (using the term "military leave" but not defining it). The term is defined, however, in Black's Law Dictionary. Black's defines, "military leave" as "[a] policy contained in employment policies or collective-bargaining agreements allowing a long-term leave of absence — without an accompanying loss of benefits — for a person in active service in the U.S.

No. 14AP-906

armed forces." *Black's Law Dictionary*, 1143 (10th Ed.2014). The Oxford English Dictionary also defines the concept as follows:

> In military, naval, and official use (also sometimes in schools and gen. in offices, etc.): *(a)* **leave of absence**, or simply **leave**, permission to be absent from a post of duty. (See also sick-leave n. at sick adj. and n. Compounds 1b) **on leave***: absent from duty by permission. *(b)* Hence, the period of such absence.

(Emphasis sic.) *Oxford English Dictionary*, www.oed.com (OED online Ed.2014); *see also* "Leave." *Merriam-Webster.com*, http://www.merriam-webster.com/dictionary/leave (accessed Jan. 11, 2016) ("authorized especially extended absence from duty or employment"). These definitions all share a core concept—a permitted absence of some duration. None of these definitions parses the period by suggesting that "leave" only begins and ends when a person has traveled to the place where the purpose of the leave is to take place and begun to engage in the activity or purpose for which the leave was obtained. Rather, "leave" represents the entire time of the absence.

{¶ 18} We acknowledge that if "military leave" were synonymous with "service in the 'uniformed services' " or "inactive duty for training" as the State argues, then the term might be more clearly defined and less broad. (State's Brief at 17-18); R.C. 5923.05(A)(2)(e). However, while a CBA may not provide fewer benefits than those prescribed by law, it can provide greater benefits. R.C. 4117.10(A)(2). Thus, there is no legal basis to limiting the CBA term, "military leave" to military benefit concepts in federal or state law. Moreover, if the drafters and negotiators of the CBA had desired "military leave" to have the same meaning as "inactive duty for training" or "service in the uniformed services" they could have defined it by reference to those terms, or simply used one of those terms instead of the broader concept of "military leave." (State's Brief at 17-18.)

{¶ 19} Furthermore, though the trial court was correct that under the CBA the arbitrator may not " 'add to, subtract from or modify any of the terms of the Agreement,' " it was incorrect to conclude that the arbitrator "inserted a provision into the CBA" and "created an obligation." (Decision & Entry at 7, quoting Compl. Ex. B at 105.) That is, the arbitrator factually found that it was "undisputed" that the parties had a "long standing practice of paying for travel and rest as a Military Leave benefit." (Pl.'s Mot. for Summ.

No. 14AP-906

Jgmt. Ex. A at 19.) Thus, according to the arbitrator's findings, the term "military leave" had historically been interpreted by the parties just as he interpreted it. He was not "add[ing] to" or "modify[ing] any of the terms of the Agreement" when he reversed the policy change instituted by the Adjutant General's Department in 2012, but rather, he was enforcing the terms of the CBA as originally interpreted, understood, and practiced by the parties. (Compl. Ex. B at 105.) Given that arbitration awards are presumed valid, and a reviewing court may not merely substitute its judgment for that of the arbitrator, the trial court erred in deciding that the arbitrator's interpretation of "military leave" was an impermissible addition or new obligation. *Findlay City School Dist.* at 131-33.

{¶ 20} Because we conclude that the arbitrator's decision was within his authority in interpreting the terms of the CBA based on their plain and ordinary meanings and because the CBA was not silent in the "area" of military leave benefits, the trial court erred in determining that the dispute was not arbitrable and that military leave benefits should have been determined by reference to statutory law rather than the plain terms of the CBA. The Union's first and second assignments of error are sustained.

## IV. CONCLUSION

{¶ 21} The provision of military leave is not an "area[] where th[e] agreement is silent" and thus is not to "be determined by [] statutes, regulations, rules or directives." (Compl. Ex. B at 158.) The arbitrator was within his authority to interpret the CBA according to the ordinary meaning of the terms and the past practices of the contracting parties. Therefore, we conclude that the trial court erred in holding that the dispute was not arbitrable and that the arbitrator exceeded his authority. The Union's two assignments of error are sustained, the judgment of the Franklin County Court of Common Pleas is reversed, and the arbitrator's decision is reinstated.

*Judgment reversed.*

TYACK, J., concurs.
BROWN, J., concurs in part and dissents in part.

_____

BROWN, J., concurring in part and dissenting in part.

{¶ 22} I concur with the majority's determination that the CBA is not silent with respect to "military leave." Although the CBA does not define that term, Appendix Q does set forth the number of hours firefighters may be paid annually for military leave. The

No. 14AP-906

CBA itself is silent as to whether firefighters are to be paid for travel or rest time. As such, the state argues, as it did before the trial court, that this matter is governed by state statute, i.e., the provisions of R.C. 5923.05. However, because military leave is contemplated under the agreement, but the CBA is not clear as to the issue of whether such benefits include time spent for travel or rest, I agree with the majority that the arbitrator did not err in looking to past practices to ascertain the parties' intent.

{¶ 23} While I agree the arbitrator did not err in considering past practices, I dissent from the majority's determination that the record supports the arbitrator's factual finding that it was undisputed the parties had a "long standing practice of paying for travel *and rest* as a Military Leave Benefit." (Emphasis added.) (Aug. 29, 2014 Mtn. for Summ. Jgmt. Ex. A at 19.) A review of the arbitrator's factual findings, including the arbitrator's overview of the testimony presented, contains no citation to specific evidence of past practices regarding payment of benefits for rest time; rather, the testimony cited involves payment for travel time. While the Supreme Court of Ohio has affirmed that "parties to a collective bargaining agreement may be bound by past practices not expressly provided for in the agreement," the court has further held that, in order to be binding on the parties, a past practice must be " '(1) unequivocal, (2) clearly enunciated, and (3) followed for a reasonable period of time as a fixed and established practice accepted by both parties.' " *Portage Cty. Bd. of Mental Retardation & Dev. Disabilities v. Portage Cty. Educators Assn. for the Mentally Retarded,* 11th Dist. No. 2006-P-0111, 2007-Ohio-2569, ¶ 18, quoting *Assn. of Cleveland Fire Fighters, Local 93 of the Internatl. Assn. of Fire Fighters v. Cleveland,* 99 Ohio St.3d 476, 2003-Ohio-4278, syllabus.

{¶ 24} In the present case, the decision of the arbitrator cites no specific testimony or other evidence with respect to past practices involving payment for rest time that would satisfy the above three-part standard. I would find, therefore, the record fails to support the arbitrator's factual finding that the parties had a long standing practice of paying for rest time. I otherwise concur in the opinion of the court.

_____