[Cite as *Lemay v. Univ. of Toledo Med. Ctr.*, 2018-Ohio-1311.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Melanie Lemay et al., | : | |
| Plaintiffs-Appellants, | : | |
| v. | : | No. 17AP-640 |
| | | (Ct. of Cl. No. 2016-00860) |
| University of Toledo Medical Center, | : | |
| | | (REGULAR CALENDAR) |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on April 5, 2018

**On brief:** *Vesper Williams*, for appellants. **Argued:** *Vesper Williams.*

**On brief:** *Michael DeWine*, Attorney General, *Randall W. Knutti, Lee Ann Rabe,* and *Howard H. Harcha,* IV, for appellee. **Argued:** *Howard H. Harcha,* IV.

APPEAL from the Court of Claims of Ohio

TYACK, J.

{¶ 1} Plaintiff-appellant, Melanie Lemay, appeals from the August 4, 2017 judgment of the Court of Claims of Ohio granting summary judgment in favor of defendant-appellee, University of Toledo Medical Center ("UTMC"). For the reasons that follow, we affirm in part and reverse in part the judgment of the Court of Claims.

## I. FACTUAL AND PROCEDURAL BACKGROUND

{¶ 2} This case involves Lemay's termination from UTMC on September 12, 2012, following the accidental disposal of a kidney meant for transplant. On August 10, 2012, a medical team was in the midst of a kidney transplant between a brother and a sister. Doctors had removed the brother's donor kidney and placed it in a bin for cooling. Lemay

was a circulating nurse assigned to relieve Judith Moore in the operating room while Moore took her lunch break.

{¶ 3}   After Moore returned from her break, she did not ask Lemay for a status report, and Lemay did not volunteer one because she believed that it was Moore's responsibility to come to Lemay to ask for an update.  Lemay then left the operating room for a brief period to retrieve a certain type of suture.  When Lemay returned, she saw Moore cleaning off the sterile prep table used to clean the donor kidney. Lemay resumed charting on the computer.  While Lemay was charting, Moore removed items from the operating room and accidentally disposed of the donor kidney.

{¶ 4}   Lemay and Moore were placed on administrative leave pending an investigation of the incident.  Moore resigned.  The UTMC live donor program was temporarily suspended.

{¶ 5}   After a pre-disciplinary hearing on September 11, 2012, the hearing officer recommended termination of employment for Lemay.  UTMC's Chancellor and Executive Vice President for Health Affairs terminated Lemay's employment on September 12, 2012. The letter of termination stated in part:

> It has been determined that you have violated the Ohio Revised Code § 124.34(A) by failing to provide good behavior and efficient service.  Specifically, you exhibited gross neglect of your duties as an OR Staff Nurse.

(Sept. 12, 2012 Letter at Ex. No. 5 to Aff. of Lisa Simpson.)

{¶ 6}   Lemay filed a grievance with her union on September 24, 2012.  Lemay informed her union representative that she would not attend a hearing without her attorney being present, and apparently a hearing took place without her presence because she asserts that she never received notice, the opportunity to refute the allegations, or the opportunity to present witnesses.  After a hearing on August 26, 2013, the grievance was denied and the termination was upheld.

{¶ 7}   Lemay filed suit alleging wrongful termination and defamation.  In her wrongful termination claim, Lemay alleged that she was terminated without just cause, and that UTMC did not follow its own policy when they terminated her.  She also claimed that the reasons for the termination were false and were based on false statements.  The

defamation claim was based on a series of articles that appeared in the Toledo Blade about the incident. Lemay claimed that the articles contained defamatory information provided to the Toledo Blade by UTMC agents. Lemay's husband also filed a claim for loss of consortium.

{¶ 8} UTMC filed a motion for summary judgment claiming that the Court of Claims lacked subject-matter jurisdiction to enforce or interpret the collective bargaining agreement. UTMC also argued that Lemay had failed to identify any false statements; that the comments she claimed were defamatory were actually constitutionally protected opinions, or that they were absolutely or qualifiedly privileged. UTMC also claimed that because the accidental disposal of a kidney during a transplant procedure was a matter of public concern, Lemay was required to prove actual injury or actual malice to prevail on her defamation claim.

{¶ 9} The Court of Claims granted the motion for summary judgment on August 4, 2017. The court determined that there was no genuine issue of material fact that Lemay's employment was governed by a collective bargaining agreement that contained a provision for binding arbitration. The court then concluded that it had no jurisdiction to enforce the agreement or to interpret it and that it lacked jurisdiction over the wrongful termination claim.

{¶ 10} With respect to the defamation claim, the Court of Claims found that Lemay had failed to identify the specific statements and information presented at the pre-disciplinary hearing and to the Toledo Blade that were false. The court further determined that any allegedly false statements made at the pre-disciplinary hearing, the hearing officer's report, and the termination letter were absolutely privileged as part of a quasi-judicial proceeding. The Court of Claims then looked at the issue of qualified privilege. It found no genuine issue of material fact that the information given to the Toledo Blade was made in good faith; was limited in scope to the investigation about the kidney disposal; and was for the purpose of providing information to the public about a situation in the community that was of compelling interest because a viable kidney was disposed of as medical waste during a live donor procedure. The court found that Lemay had failed to identify any particular statements published by the Toledo Blade that were false or were

not covered under qualified privilege.  The Court of Claims further found that Lemay failed to establish actual malice or special damages.

{¶ 11}  Lemay filed a timely notice of appeal from the decision of the Court of Claims.

## II. ASSIGNMENTS OF ERROR

{¶ 12}  Lemay has provided a single, uninterrupted assignment of error.  To aid in understanding, we have supplied numbers and separated Lemay's various assertions:

> [I.] Appellant states that the Court of Claims abused its discretion by making findings of fact as stated in the Courts JUDGMENT ENTRY and DECISION (hereinafter referred as "JE") of issues that are in dispute by the parties.  Those facts found are opinions in dispute and not based on the evidence presented and not facts proven.  Appellant states that the trial court abused its discretion by finding at page one of the JE that " . . . Ms Lemay also failed to log into the computer system" when the facts presented show that Ms Lemay tried to log in but the computer would not let her and that this had been an ongoing problem;
>
> [II.] and on page two of the JE that " . . . Ms Lemay's employment with UTMC was governed by the CBA with UTMC." when the facts presented show that the CAB was not in effect, was not signed and not a valid agreement controlling Ms Lemay's employment and providing union representation;
>
> [III.]  and on page 6 of the JE that "The Court believes that verification in this manner is improper because Ms Lemay cannot personally swear to the legal arguments made by her counsel when the complaint was verified by her Affidavit on page 15 of PLAINTIFF'S VERIFIED MEMORANDUM IN OPPOSITION TO THE UNIVERSITY OF TOLEDO'S MOTION FOR SUMMARY JUDGMENT ("memorandum") and by Ms Lemay's EXHIBIT AFFIDAVIT also attached thereto;
>
> [IV.]  and on page 8 of the JE " . . . it appears that despite any allegations of the CBA's expiration, Ms. Lemay still received representation from her union." when the facts presented show that the Union only presented the grievance Ms. Lemay prepared and then did nothing further to advance her claims, the union is not an attorney that could represent her and that she requested to have an attorney represent her that was not allowed;

[V.] and on page 9 of the JE ". . . Plaintiffs have failed to identify the specific statements and information presented at the hearing (what hearing) and to the Toledo Blade which were false." when Ms. Lemay attached to her memorandum at Exhibit A, her termination letter stating that she ". . . failed to exhibit good behavior and efficient service and specifically exhibit gross neglect of duties as an OR staff nurse." which is an opinion and not facts and are denied by Ms. Lemay through out her Memorandum and in her Exhibit Affidavit attached to her memorandum and by the statements made to the Toledo Blade by UTMC agents as stated in the four articles attached to the Memorandum at Exhibit C when the totality of the articles as read are false and inflammatory toward M. Lemay and are opinions and not facts proven at a hearing with Ms. Lemay represented by an attorney;

[VI.] and that the Court reasoned that Ms. Lemay was a member of a bargaining unit represented by a union and that she initially filed a grievance after her termination and that Ms. Lemay eventually abandoned her grievance prior to arbitration. However these facts are in dispute and Plaintiff states that they are not true.

[VII.] Further, on page 8 of the JE the Court states that ". . . this Court does not have jurisdiction over Lemay's wrongful termination claim" and then granting Defendant's motion for summary judgment when it could have dismissed for lack of jurisdiction.

Ms. Lemay asks that this Court review all the pleading rather than repeating all that was stated therein again.

(Sic passim.)

## III. STANDARD OF REVIEW

{¶ 13} Pursuant to Civ.R. 56(C), summary judgment is appropriate only under the following circumstances: (1) no genuine issue of material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion, that conclusion being adverse to the nonmoving party. *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66 (1978). "When seeking summary judgment on grounds that the non-moving party cannot prove its case, the moving party bears the initial

burden of informing the trial court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on an essential element of the non-moving party's claims." *Lundeen v. Graff*, 10th Dist. No. 15AP-32, 2015-Ohio-4462, ¶ 11, citing *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). Once the moving party meets its initial burden, the nonmovant must set forth specific facts demonstrating a genuine issue for trial. *Dresher* at 293. The nonmoving party may not rest on the mere allegations and denials in the pleadings but, instead, must point to or submit some evidentiary material that shows a genuine dispute over the material facts exists. *Henkle v. Henkle*, 75 Ohio App.3d 732, 735 (12th Dist.1991).

{¶ 14} Appellate review of summary judgment is de novo. *Gabriel v. Ohio State Univ. Med. Ctr.*, 10th Dist. No. 14AP-870, 2015-Ohio-2661, ¶ 12, citing *Byrd v. Arbors E. Subacute & Rehab. Ctr.*, 10th Dist. No. 14AP-232, 2014-Ohio-3935, ¶ 5. "When an appellate court reviews a trial court's disposition of a summary judgment motion, it applies the same standard as the trial court and conducts an independent review, without deference to the trial court's determination." *Gabriel* at ¶ 12, citing *Byrd* at ¶ 5, citing *Maust v. Bank One Columbus, N.A.*, 83 Ohio App.3d 103, 107 (10th Dist.1992).

## IV. ANALYSIS

{¶ 15} For ease of discussion, we elect to address some assignments of error out of order and to group the wrongful termination arguments together. Assignments of error one, two, four, six, and seven are all related to the wrongful termination claim.

## V. COLLECTIVE BARGAINING AGREEMENT AND JURISDICTION

{¶ 16} In her second assignment of error, Lemay asserts that a genuine issue of material fact exists as to whether her employment was governed by a collective bargaining agreement. UTMC claims that Lemay's employment was governed by a public collective bargaining agreement, and Lemay contends that the collective bargaining agreement had lapsed, was no longer in effect, had not been signed, and was not a valid agreement.

{¶ 17} Attached to UTMC's motion for summary judgment is a copy of the collective bargaining agreement between the University of Toledo and Lemay's union, Local No. 2415 and Ohio Council No. 8 American Federation of State, County and Municipal Employees AFL-CIO. The cover page states the contract is effective "7/1/2009 - 6/30/2012." (Aff. Of Lisa Simpson at Ex. No. 1.) The signature page is unsigned and undated but contains the

notation "Signatures On File." *Id.* at 58. A signed copy of a contract extension between the parties was also attached to UTMC's motion for summary judgment and extended the existing provisions of the CBA through June 30, 2013. (Aff. of Lisa Simpson at Ex. No. 2.) The extension covered the time period of the alleged conduct that led to Lemay's termination. In addition, Lemay filed a grievance under the collective bargaining agreement after she was placed on administrative leave and terminated.

{¶ 18} Based on the unrefuted evidence, we can find no error in the determination that Lemay's employment with UTMC was governed by the collective bargaining agreement. The second assignment of error is overruled.

{¶ 19} In her fourth and sixth assignments of error, Lemay contends that the union failed to properly advance her grievance, that she was denied the opportunity to have her lawyer represent her during the grievance process, and that she did not abandon her grievance. Having found Lemay's employment to be governed by a collective bargaining agreement, we must consider whether the Court of Claims has subject-matter jurisdiction over her wrongful termination claim.

{¶ 20} R.C. 4117.09(B)(1) requires a public employees collective bargaining agreement to contain specific language restricting where a party to a collective bargaining agreement may bring suit. That provision provides:

> The agreement shall contain a provision that:
>
> (1) Provides for a grievance procedure which may culminate with final and binding arbitration of unresolved grievances, and disputed interpretations of agreements, and which is valid and enforceable under its terms when entered into in accordance with this chapter. No publication thereof is required to make it effective. A party to the agreement may bring suits for violation of agreements or the enforcement of an award by an arbitrator in the court of common pleas of any county wherein a party resides or transacts business.

{¶ 21} Thus, the statute requires the collective bargaining agreement to contain a two-step procedure: a grievance procedure with arbitration first, and ultimately, the right to file suit in the common pleas court. R.C. 4117.09 grants exclusive jurisdiction to the courts of common pleas over actions governing a collective bargaining agreement. *Moore v. Youngstown State Univ.*, 63 Ohio App.3d 238 (10th Dist.1989).

{¶ 22} The collective bargaining agreement provided to the Court of Claims in conjunction with the motion for summary judgment contains the provision required by R.C. 4117.09(B)(1) and provides for final and binding arbitration. Thus, any claims Lemay has concerning the union's alleged lack of representation cannot be brought in the Court of Claims. The Court of Claims lacks subject-matter jurisdiction over her claims of alleged violations of the collective bargaining agreement.

{¶ 23} With respect to Lemay's alleged wrongful termination, R.C. 4117.10(A) provides, in pertinent part, that a collective bargaining agreement between a public employer and the bargaining unit "governs the wages, hours, and terms and conditions of public employment covered by the agreement." That section further provides that "[i]f the agreement provides for a final and binding arbitration of grievances, public employers, employees, and employee organizations are subject solely to that grievance procedure."

{¶ 24} "R.C. 4117.10(A) recognizes that arbitration provides the exclusive remedy for violations of an employee's employment rights." *Gudin v. W. Reserve Psychiatric Hosp.*, 10th Dist. No. 00AP-912 (June 14, 2001). "Under R.C. 4117.10(A), if an agreement provides for final and binding arbitration as an exclusive remedy, the agreement prevails." *Thompson v. Dept. of Mental Retardation & Dev. Disabilities*, 5th Dist. No. 09CA00041, 2009-Ohio-6558, ¶ 15.

{¶ 25} The collective bargaining agreement contained a provision for final and binding arbitration as an exclusive remedy. Lemay's wrongful termination claim is based on allegations that UTMC lacked just cause to terminate her employment. Lemay's employment was governed by a collective bargaining agreement and the Court of Claims lacks jurisdiction to enforce such an agreement. Her claim cannot be brought in the Court of Claims because the wrongful termination claim concerns the terms and conditions of her employment.

{¶ 26} Therefore, the fourth and sixth assignments of error must be overruled because the Court of Claims lacked subject-matter jurisdiction over the wrongful termination claim.

{¶ 27} In her seventh assignment of error, Lemay argues that the Court of Claims erred in granting summary judgment with respect to the wrongful termination claim instead of dismissing the claim for lack of jurisdiction. We agree. Because the Court of

Claims lacked subject-matter jurisdiction over the claim, it could not grant judgment in favor of UTMC, and instead, the claim must be dismissed. The seventh assignment of error is sustained, and we shall remand the matter for the Court of Claims to dismiss the claim.

{¶ 28} In her first assignment of error, Lemay appears to argue that a genuine issue of material fact exists concerning her alleged failure to login to the computer system when she took over for Nurse Moore who went on a lunch break. Lemay contends that she tried to login to the computer system, but the computer would not allow her to do so, and this had been an ongoing problem.

{¶ 29} While there may be a factual dispute over Lemay's alleged failure to login to the computer system, it is not a material factual dispute because this issue is one that concerns the conditions of Lemay's employment and is governed by the collective bargaining agreement. The Court of Claims lacks jurisdiction over this claim.

{¶ 30} The first assignment of error is overruled.

{¶ 31} In sum, the Court of Claims lacked subject-matter jurisdiction over the wrongful termination claim, and must dismiss the claim.

## VI. EVIDENCE CONSIDERED BY THE COURT

{¶ 32} In her third assignment of error, Lemay appears to be arguing that the Court of Claims erred in finding that Lemay attempted to personally swear to and verify the legal arguments made by her counsel in the memorandum in opposition to the motion for summary judgment. She also appears to be arguing that the Court of Claims improperly refused to consider her evidence that she submitted in opposition to the motion for summary judgment. (*See* Oct. 10, 2017 Lemay Brief at 3-4.)

{¶ 33} The Court of Claims determined that Lemay's memorandum in opposition to the motion for summary judgment contained unauthenticated materials that did not conform to the dictates of Civ.R. 56(C). Civ.R. 56(C) provides, in pertinent part, that:

> Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule.

{¶ 34} Nevertheless, in the interests of justice, the Court of Claims considered all of Lemay's evidence in formulating its decision. (Aug. 4, 2017 Decision at 7.) The third assignment of error is overruled.

## VII. DEFAMATION CLAIM

{¶ 35} In her fifth assignment of error, Lemay takes issue with the Court of Claims' determination that she failed to identify the specific statements and information presented at the pre-disciplinary hearing and to the Toledo Blade that were false. Lemay contends that she did identify specific statements that were false, namely the termination letter and statements made by UTMC agents in the four articles published by the Toledo Blade.

{¶ 36} The termination letter was the culmination of a disciplinary process that began when Lemay was placed on administrative leave after the incident. Lemay then participated in a pre-disciplinary hearing before a hearing officer pursuant to the collective bargaining agreement where she was present and represented by Randy Desposito, AFSCME Local 2415 President, Mary Villegas, Local 2415 Chief Steward, and Mr. Steve Kowalik, AFSCME Ohio Council 8. (Aff. of Lisa Simpson at Ex. No. 3; UTMC Mot. for Summary Jgmt.) The hearing officer took testimony and admitted exhibits at the hearing. Lemay testified at the hearing. The hearing officer issued a six-page report and recommendation, finding that the evidence presented substantiated the allegations against Lemay and recommending termination. The report and recommendation was sent to Dr. Jeffery Gold, Chancellor and EVP - Health Affairs Appointing Authority, who then issued the letter of termination on September 12, 2012.

{¶ 37} UTMC argued before the Court of Claims and on appeal that the pre-disciplinary hearing was a quasi-judicial proceeding, and, as a result, the hearing officer's report and recommendation and Dr. Gold's letter of termination were absolutely privileged against defamation claims because they were part of and reasonably related to a quasi-judicial proceeding.

{¶ 38} "[A] statement in a judicial or quasi-judicial proceeding is absolutely privileged and may not form the basis for a defamation action as long as the allegedly defamatory statement is reasonably related to the proceedings." *Savoy v. Univ. of Akron*, 10th Dist. No. 13AP-696, 2014-Ohio-3043, ¶ 19; *Doe v. Mt. Vernon City Sch. Dist. Bd. of*

*Edn.*, S.D.Ohio No. 2:08-cv-575 (Apr. 6, 2010), citing *Hecht v. Levin*, 66 Ohio St.3d 458, 460 (1993), citing *Surace v. Wuliger*, 25 Ohio St.3d 229 (1986), syllabus.

{¶ 39} In determining whether a proceeding is quasi-judicial, the Supreme Court of Ohio has indicated the most common test is whether the function under consideration involves the exercise of discretion and involves notice and the right to a hearing. *M.J. Kelley Co. v. Cleveland*, 32 Ohio St.2d 150, 153 (1972); *TBC Westlake v. Hamilton Cty. Bd. of Revision*, 81 Ohio St.3d 58, 62 (1998). The Supreme Court has further indicated that quasi-judicial proceedings require notice, hearing, and the opportunity for introduction of evidence. *Union Title Co. v. State Bd. of Edn.*, 51 Ohio St.3d 189, 191 (1990). "When there is no requirement for notice, hearing, or an opportunity to present evidence, the proceedings are not quasi-judicial." *State ex rel. Mun. Constr. Equip. Operators' Labor Council v. Cleveland*, 141 Ohio St.3d 113, 2014-Ohio-4364, ¶ 36, citing *M.J. Kelley Co.*, at paragraph two of the syllabus ("proceedings of administrative officers and agencies are not quasi-judicial where there is no requirement for notice, hearing, and the opportunity for introduction of evidence."). *Elec. Classroom of Tomorrow v. Ohio State Bd. of Edn.*, 10th Dist. No. 17AP-510, 2018-Ohio-716, ¶ 20.

{¶ 40} Here, Lemay participated in a hearing in accordance with her collective bargaining agreement that culminated in her termination by Dr. Gold. In *Elec. Classroom of Tomorrow*, the State Board of Education made a final determination after considering a report and recommendation made by a hearing officer designated by the board. This court determined that the board of education proceedings including the final vote and determination were quasi-judicial in nature. The same logic applies here to the disciplinary proceedings against Lemay. Lemay has not presented any evidence to dispute that the letter was not reasonably related to her disciplinary proceeding. Therefore, the termination letter noting the concurrence with the hearing officer's report is absolutely privileged.

{¶ 41} With respect to the Toledo Blade articles, exhibit C attached to Lemay's memorandum in opposition to the University of Toledo's motion for summary judgment contains copies of the four Toledo Blade articles that Lemay claims contain defamatory statements made by agents of UTMC.

{¶ 42} The first article is dated August 28, 2012 and is headed "3rd suspended in kidney error." We can find no statements in that article attributable to agents of UTMC

that reference Lemay, and Lemay has not set forth what specifically in that article she alleges is false.

{¶ 43} The second article is dated August 31, 2012, and is headed "Doctor loses director title after botched transplant." With respect to Lemay the article states: "Three UTMC employees have been suspended with pay for their involvement in a surgery this month that went awry when a viable kidney was thrown away into a pool of other medical waste instead of being transplanted into the donor's sister. * * * Two nurses involved in the surgery, Melanie Lemay, a full-time employee, and Judith Moore, a part-time employee, also have been suspended with pay pending the results of a multiagency investigation."

{¶ 44} Again, we can detect nothing false in the statements that reference Lemay, and Lemay has not stated what specifically in that article is false and attributable to an agent of UTMC.

{¶ 45} The third article is undated in the copy before us, but is headed "Fault found earlier with UTMC transplant program." The article discusses problems with the live kidney donor program over the past decade. The article states that: "Additionally, two people involved in the Aug. 10 transplant attempt at the hospital in which a kidney was thrown away faced disciplinary action in the past, the Blade has learned." The article also stated:

> Ms. Lemay's personnel file with the university shows several disciplinary actions over the past decade. She received a written or oral warning Feb. 17, 2010, after she was "inappropriate to all staff and borderline harassing to some staff" seven times between Jan. 22, 2010 and Feb. 4, 2010.
>
> "Statements were that you were ranting, hysterical, yelling, extremely upset, crying/crying heavily/crying uncontrollably, irate, talking very loudly and agitated," university records said.
>
> She last was on paid administrative leave in September, 2006, for an unspecified action.
>
> On Jan. 17, 2002, she signed an agreement to avoid a three-day suspension for making repeated demeaning and slanderous statements about management, as well as placing a harassing telephone call to a lead nurse.

{¶ 46} The article identifies the information on which it rests as Lemay's personnel file. Lemay has not produced any evidence that the information in her personnel file is false.

{¶ 47} The fourth article is dated September 27, 2012 and is headed, "UTMC review finds nurse failed to follow procedures in botched kidney transplant." The article states in pertinent part:

> On Monday, UTMC said it had fired Melanie Lemay, a 30-year employee and full-time registered nurse who was the 'RN circulator' in the operating room at the time of the incident.

The article quoted UTMC President Lloyd Jacobs as saying:

> The two nurses who are no longer employed by the hospital failed to follow just such procedures * * *.
>
> We did not terminate them or allow them to retire in lieu of termination because they made a mistake, Dr. Jacobs said. We terminated them because they violated policy.

The article quotes from the pre-disciplinary report that:

> She neglected her duty, Mr. Klep wrote, because she did not update Ms. Moore when she returned.
>
> From the vantage point of Ms. Lemay in the [operating room] suite, she could have not helped but notice that Nurse Moore was removing items prior to the closing of the patient, Mr. Klep said.
>
> As circulating nurse, it was Ms. Lemay's duty to stop or halt Ms. Moore from taking items out of the O.R.

{¶ 48} The article then quoted Dr. Martin Levy, a Texas transplant surgeon hired by UTMC to review the kidney transplant program. The article states:

> Dr. Levy, in his report, did not single out Ms. Lemay, but said he was "baffled that no other team member saw [Ms. Moore] dismantle the slush machine and remove the contents from the room."

{¶ 49} The quotation from the pre-disciplinary report is absolutely privileged as discussed above. Additionally, Lemay concedes that the statements she alleges are

defamatory are opinions rather than facts.  She states that the "totality of the articles as read are false and inflammatory towards M. Lemay and are opinions and not facts proven at a hearing with Ms. Lemay represented by an attorney." (Lemay Brief at 5.)

{¶ 50} Expressions of opinion are immune from liability under the Ohio Constitution as a valid exercise of freedom of the press.  *Vail v. Plain-Dealer Publishing Co.*, 72 Ohio St.3d 279, 280 (1995).  The Ohio Constitution's separate and independent protection for opinions is not limited in application to allegedly defamatory statements made by media defendants, but also applies to non-media defendants.  *Wampler v. Higgins*, 93 Ohio St.3d 111 (2001), syllabus.  Lemay has conceded that the statement by the university president is one of opinion, and as discussed previously, the pre-disciplinary report is absolutely privileged as part of a quasi-judicial proceeding.

{¶ 51} Lemay  has failed to identify specific false statements in some of the articles, and the statements she does allege are defamatory statements made by agents of UTMC are either constitutionally protected opinions or privileged as part of quasi-judicial proceedings.  The fifth assignment of error is overruled.

## VIII. CONCLUSION

{¶ 52} Based on the foregoing, assignments of error one, two, three, four, five, and six are overruled.  Assignment of error seven is sustained.  The judgment of the Court of Claims of Ohio is sustained in part and reversed in part and remanded for further proceedings in accordance with law consistent with this decision.

*Judgment affirmed in part, reversed in part;*
*case remanded.*

KLATT and SADLER JJ., concur.

—————————