[Cite as *Bleise v. Ohio Dept. of Rehab. & Corr.*, 2025-Ohio-5814.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

Karen Bleise,                                :

     Plaintiff-Appellant,         :                No. 24AP-567
                                                                (Ct. of Cl. No. 2024-00147JD)
v.                                           :
                                                            (REGULAR CALENDAR)
Ohio Department of Rehabilitation            :
and Correction et al.,
                                             :
     Defendants-Appellees.        :

                                             :

---

D E C I S I O N

Rendered on December 30, 2025

---

**On brief:** *Ronald P. Keller*, and *Brian E. Lusardi*, for
appellant.

**On brief:** *Dave Yost*, Attorney General, *Eric A. Walker*,
*Daniel J. Benoit*, and *Duffy Jamieson*, for appellee. **Argued**:
*Duffy Jamieson*.

APPEAL from the Court of Claims of Ohio

EDELSTEIN, J.

{¶ 1}   Plaintiff-appellant, Karen Bleise, appeals from a judgment entry of the Court
of Claims of Ohio granting the motion to dismiss of appellee, Ohio Department of
Rehabilitation and Correction ("ODRC").  For the following reasons, we affirm.

## I.  Facts and Procedural History

{¶ 2}   On February 13, 2024, Ms. Bleise filed a complaint against ODRC alleging an
inmate attacked her while she was working as a corrections officer at the Dayton

Correctional Institution. (Feb. 13, 2024 Compl. at ¶ 5.) Ms. Bleise alleged the attack caused her serious and permanent injuries including a broken nose, orbital fractures, a concussion, a traumatic brain injury, and post-traumatic stress disorder. (*Id.* at ¶ 5.) The complaint alleged ODRC exposed Ms. Bleise to the inmate's attack by failing to follow its own safety policies and procedures. (*Id.* at ¶ 7.)

{¶ 3} Ms. Bleise asserted three causes of action: (1) gross negligence, recklessness, or willful, wanton behavior ("negligence"); (2) intentional infliction of emotional distress; and (3) breach of contract. In her negligence claim, Ms. Bleise stated ODRC "had the duty of care to protect [her] from the injuries she received," and that ODRC breached its duty "by failing to follow [its] own safety protocols, [and its] own policies and procedures manual." (Compl. at ¶ 9.) As to her claim of intentional infliction of emotional distress, Ms. Bleise stated ODRC intentionally "den[ied] the severity of [her] injuries, [tried] to place fault on [her], [failed] to call emergency personnel to the scene of the incident [so she could] be taken to the hospital, [required her] to return to work the next day, [and failed] to properly fill out procedurally required use[-]of[-]force forms." (Compl. at ¶ 12.) Lastly, in her breach of contract claim, Ms. Bleise asserted ODRC breached an "employment contract" by failing "to provide adequate, safe measures, policies, and procedures[] to protect [her]." (Compl. at ¶ 15.)

{¶ 4} On May 14, 2024, ODRC filed a motion to dismiss Ms. Bleise's complaint pursuant to Civ.R. 12(B)(1) and/or Civ.R. 12(B)(6). In its motion, ODRC asserted there existed a collective bargaining agreement ("CBA") governing Ms. Bleise's employment as a corrections officer, including the employment conditions Ms. Bleise challenged in her complaint, and the CBA provided for final and binding arbitration of grievances that arise from its terms. (Mot. to Dismiss at 2.) ODRC generally argued the Court of Claims lacked subject-matter jurisdiction over Ms. Bleise's claims as those claims arise from and depend upon the CBA, so Ms. Bleise's exclusive remedy was arbitration. ODRC attached a copy of the CBA to its motion to dismiss. (Mot. to Dismiss, Ex. A.)

{¶ 5} ODRC made further arguments specific to each of Ms. Bleise's three causes of action. First, ODRC argued that its participation in the Ohio workers' compensation system rendered it immune from Ms. Bleise's negligence claim. (*Id.* at 4-7.) With respect to her second claim, ODRC recognized immunity under R.C. Chapter 4117 does not extend

to intentional tort claims; however, ODRC argued Ms. Bleise failed to plead a claim for intentional infliction of emotional distress because she did not allege in her complaint that ODRC acted with a specific intent to cause her injury. (*Id.* at 4-7.) ODRC further argued the alleged conduct underlying her claim was not extreme or outrageous enough to state a claim for intentional infliction of emotional distress. (*Id.* at 8.) Lastly, ODRC argued the CBA preempted the breach of contract claim. (*Id.* at 9.)

{¶ 6} The Court of Claims granted Ms. Bleise two unopposed extensions of time to respond to the motion to dismiss. (June 14, 2024 Entry; July 10, 2024 Entry.)- Despite the extensions of time, Ms. Bleise did not file a response to ODRC's motion to dismiss.

{¶ 7} In an August 9, 2024 decision, the Court of Claims granted ODRC's motion to dismiss the complaint. In its decision, the Court of Claims set forth several alternative grounds warranting dismissal of the complaint. As relevant here, the Court of Claims determined the allegations underlying Ms. Bleise's negligence and intentional infliction of emotional distress claims related to workplace conditions governed by the CBA. Thus, the Court of Claims found the framework for resolving public sector labor disputes through binding arbitration contained in R.C. Chapter 4117 applied to those claims. (Aug. 9, 2024 Decision at 2-3, 7.) Additionally, the Court of Claims determined Ms. Bleise's claim for breach of contract would necessarily require interpretation of the CBA. (*Id.* at 7.) Noting the Court of Claims lacks jurisdiction to determine whether conduct violates a CBA, the Court of Claims determined it lacked subject-matter jurisdiction over all three of Ms. Bleise's causes of action and dismissed the claims pursuant to Civ.R. 12(B)(1). (*Id.* at 8.) In an August 9, 2024 judgment entry, the Court of Claims dismissed Ms. Bleise's complaint in its entirety. Ms. Bleise timely appeals.

## II. Assignments of Error

{¶ 8} Ms. Bleise raises the following four assignments of error for our review:

I. The trial court abused its discretion in dismissing the Appellant's Complaint by holding that the Court lacked jurisdiction on the claim of "negligence" because the Appellant did not allege the Appellee committed an intentional tort.

II. The trial court abused its discretion in dismissing the Appellant's Complaint by holding that Appellant's claim of

"negligence" is barred by the doctrine of discretionary immunity.

III. The trial court abused its discretion in dismissing the Appellant's Complaint by holding that the Appellant's claim for intentional infliction of emotional distress is barred both by statute and by the Collective Bargaining Agreement.

IV. The trial court abused its discretion in dismissing the Appellant's Complaint by holding that the Appellant's claim for breach of contract is barred by the Collective Bargaining Agreement.

## III.  Standard of Review and Applicable Law

{¶ 9}  Civ.R. 12(B)(1) allows parties to move for dismissal based on a trial court's "[l]ack of jurisdiction over the subject matter" of a case.  "Subject-matter jurisdiction involves a court's power to hear and decide a case on the merits." *Evans v. Ohio Dept. of Rehab. & Corr.*, 2020-Ohio-3191, ¶ 7 (10th Dist.), citing *Lowery v. Ohio Dept. of Rehab. & Corr.*, 2015-Ohio-869, ¶ 6 (10th Dist.).  In ruling on a Civ.R. 12(B)(1) motion to dismiss, a trial court must dismiss for lack of subject-matter jurisdiction if the complaint fails to allege "any cause of action cognizable by the forum." *State ex rel. Bush v. Spurlock*, 42 Ohio St.3d 77, 80 (1989). *See also Evans* at ¶ 7, citing *Brown v. Levin*, 2012-Ohio-5768, ¶ 14 (10th Dist.).  An appellate court reviewing a trial court's decision on a Civ.R. 12(B)(1) motion to dismiss for lack of subject-matter jurisdiction applies a de novo standard of review. *Pankey v. Ohio Dept. of Rehab. & Corr.*, 2014-Ohio-2907, ¶ 7 (10th Dist.); *Robinson v. Ohio Dept. of Rehab. & Corr.*, 2011-Ohio-713, ¶ 5 (10th Dist.).  "De novo review means that we apply the same standards as the trial court." *Neinast v. Ohio Expositions Comm.*, 2009-Ohio-4850, ¶ 5 (10th Dist.).

{¶ 10}  In contrast, a motion to dismiss for failure to state a claim upon which relief can be granted under Civ.R. 12(B)(6) tests the sufficiency of the complaint. *Cool v. Frenchko*, 2022-Ohio-3747, ¶ 13 (10th Dist.), quoting *Morrow v. Reminger & Reminger Co., L.P.A.*, 2009-Ohio-2665, ¶ 7 (10th Dist.).  Dismissal of a complaint, pursuant to Civ.R. 12(B)(6), is appropriate "only if it appears beyond a doubt that the plaintiff can prove no set of facts entitling the plaintiff to recovery." *Bullard v. McDonald's*, 2021-Ohio-1505, ¶ 11 (10th Dist.), citing *O'Brien v. Univ. Community Tenants Union, Inc.*, 42 Ohio St.2d 242

(1975), syllabus. In determining whether dismissal is appropriate, the trial court "must presume all factual allegations contained in the complaint to be true and must make all reasonable inferences in favor of the plaintiff." *Id.*, citing *Jones v. Greyhound Lines, Inc.*, 2012-Ohio-4409, ¶ 31 (10th Dist.). "The court need not, however, accept as true any unsupported and conclusory legal propositions advanced in the complaint." *Id.*, citing *Morrow* at ¶ 7. We review a trial court's decision on a Civ.R. 12(B)(6) motion to dismiss de novo. *Foreman v. Ohio Dept. of Rehab. & Corr.*, 2014-Ohio-2793, ¶ 9 (10th Dist.).

## IV. First and Second Assignments of Error–Negligence

{¶ 11} In her first and second assignments of error, Ms. Bleise argues the Court of Claims erred in dismissing her negligence claim.

{¶ 12} To prove a negligence claim, a plaintiff must demonstrate (1) the existence of a duty, (2) a breach of that duty, and (3) an injury that was proximately caused by the breach. *Cotten v. Ohio Dept. of Rehab. & Corr.*, 2018-Ohio-3392, ¶ 11 (10th Dist.), citing *Peters v. Ohio Dept. of Rehab. & Corr.*, 2015-Ohio-2668, ¶ 10 (10th Dist.).

{¶ 13} R.C. Chapter 4117 governs collective bargaining for public employees. "An agreement between a public employer and an exclusive representative entered into pursuant to [R.C. Chapter 4117] governs the wages, hours, and terms and conditions of public employment covered by the agreement." R.C. 4117.10(A). "If the agreement provides for a final and binding arbitration of grievances, public employers, employees, and employee organizations are subject solely to that grievance procedure." *Id.* Pursuant to R.C. 4117.10(A), therefore, "a collective bargaining agreement controls all matters related to the terms and conditions of employment." *Hassey v. Columbus*, 2018-Ohio-3958, ¶ 22 (10th Dist.), citing *Fischer v. Kent State Univ.*, 2015-Ohio-3569, ¶ 18 (10th Dist.), and *Cerrone v. Univ. of Toledo*, 2012-Ohio-953, ¶ 6 (10th Dist.). Where a CBA provides for final and binding arbitration, such arbitration is the exclusive remedy for alleged violations of an employee's employment rights covered by the agreement. *Id.*, citing *Fischer* at ¶ 18, *Cerrone* at ¶ 8, and *Ryther v. Gahanna*, 2005-Ohio-2670, ¶ 12 (10th Dist.).

{¶ 14} Additionally, "Ohio has a strong and well-established public policy favoring arbitration" which guides our review. *State v. Ohio Civ. Serv. Emps. Assn., Local 11 AFSCME AFL-CIO*, 2016-Ohio-5899, ¶ 12 (10th Dist.). *See also Schaefer v. Allstate Ins.*

*Co.*, 63 Ohio St.3d 708, 712 (1992) ("Arbitration is favored because it provides the parties thereto with a relatively expeditious and economical means of resolving a dispute"). This strong public policy favoring arbitration extends to arbitration provisions contained in CBAs pursuant to R.C. Chapter 4117. *See Ryther* at ¶ 21, citing *Mahoning Cty. Bd. of Mental Retardation v. Mahoning Cty. TMR Edn. Assn.*, 22 Ohio St.3d 80, 84 (1986) ("to deny credence and efficacy to the[] [grievance arbitration procedures of the collective bargaining agreement] would be, in effect, writing them out of the collectively bargained contract of the parties," which would "defeat the bargain made by the parties and would defeat, as well, the strong public policy favoring private settlement of grievance disputes arising from collective bargaining agreements").

{¶ 15} Here, the CBA between the State of Ohio and the Ohio Civil Service Employees Association includes a grievance procedure for the parties to resolve "any difference, complaint or dispute between the Employer and the Union or any employee regarding the application, meaning or interpretation of this Agreement." (Mot. to Dismiss, Ex. A at Section 25.01.) The grievance procedure expressly provides for final and binding arbitration. (Mot. to Dismiss, Ex. A at Section 25.03.) Thus, under R.C. 4117.10(A), Ms. Bleise was required to resolve any difference, complaint, or dispute over an employment matter covered by the CBA through arbitration.

{¶ 16} In her negligence claim, Ms. Bleise alleged ODRC breached its obligation "to follow [its] own safety protocols, [and its] own policies and procedures manual." (Compl. at ¶ 9.) The CBA specifically covers health and safety in the workplace and requires the employer to "comply with applicable Federal, State and local safety laws, rules and regulations, and Agency safety rules and regulations." (Mot. to Dismiss, Ex. A at Section 11.01.) The allegations underlying Ms. Bleise's negligence claim relate to the terms of her employment related to workplace safety covered by the CBA; therefore, her sole remedy was through arbitration, and the Court of Claims lacked subject-matter jurisdiction over the negligence claim. *Lemay v. Univ. of Toledo Med. Ctr.*, 2018-Ohio-1311, ¶ 25 (10th Dist.) (the Court of Claims lacked subject-matter jurisdiction over a claim that concerned the terms and conditions of the plaintiff's employment where the CBA provided for final and binding arbitration); *Cerrone*, 2012-Ohio-953, at ¶ 8 (when and how an employer may lay off an employee is a term and condition of employment covered by the collective bargaining

agreement, so the grievance procedure contained in the collective bargaining agreement provided the sole remedy for the employee). Because the Court of Claims correctly determined it lacked subject-matter jurisdiction to consider Ms. Bleise's negligence claim, the court did not err in dismissing that claim. *Lemay* at ¶ 25; *Cerrone* at ¶ 8.

{¶ 17} Having determined the Court of Claims lacked subject-matter jurisdiction over the negligence claim and correctly dismissed that claim pursuant to Civ.R. 12(B)(1), we need not address Ms. Bleise's additional arguments related to the Court of Claims' alternative grounds for dismissing the negligence claim. *See Ocwen Loan Servicing, LLC v. Graf*, 2018-Ohio-2411, ¶ 42 (10th Dist.) (appellate court need not address appellants' alternative arguments where it has already determined it must affirm the trial court's judgment); *Henderson v. Dewine*, 2022-Ohio-1025, ¶ 8 (1st Dist.) (appellate court need not address all of appellant's arguments where one argument is dispositive). Accordingly, we overrule Ms. Bleise's first and second assignments of error.

## V. Third Assignment of Error–Intentional Infliction of Emotional Distress

{¶ 18} In her third assignment of error, Ms. Bleise argues the Court of Claims erred in dismissing her claim for intentional infliction of emotional distress.

{¶ 19} To establish a claim for intentional infliction of emotional distress, a plaintiff must prove (1) the defendant intended to cause the plaintiff serious emotional distress, (2) the defendant's conduct was " 'extreme and outrageous,' " and (3) the conduct proximately caused the plaintiff's serious emotional distress. *Meminger v. Ohio State Univ.*, 2017-Ohio-9290, ¶ 14 (10th Dist.), quoting *Phung v. Waste Mgt.*, 71 Ohio St.3d 408, 410 (1994).

{¶ 20} The Court of Claims determined the allegations underlying Ms. Bleise's claim of intentional infliction of emotional distress originated from workplace conditions and are, therefore, governed by the CBA. Consistent with R.C. 4711.10(A), where a CBA provides for final and binding arbitration, claims for intentional infliction of emotional distress based on allegedly wrongful acts **related to** employment matters covered by the CBA are subject to arbitration. *Gudin v. W. Reserve Psychiatric Hosp.*, 2001 Ohio App. LEXIS 2634, *10 (10th Dist. June 14, 2001) ("in ascertaining whether the employer's conduct was extreme or outrageous, an examination of the collective bargaining agreement may be required and, as such, [intentional infliction of emotional distress] claims predicated on allegedly

wrongful acts directly related to the terms and conditions of a plaintiff's employment are generally preempted by the collective bargaining agreement"); *Marzano v. Struthers City School Dist. Bd. of Edn.*, 2017-Ohio-7768, ¶ 17 (7th Dist.) ("Ohio courts will dismiss [intentional infliction of emotional distress claims] for lack of subject[-]matter jurisdiction when the allegations underlying the claim are governed by a collective bargaining agreement with a grievance procedure requiring final and binding arbitration"), citing *Gudin*, and *Fischer*, 2015-Ohio-3569, at ¶ 19 (appellant's intentional infliction of emotional distress claim was preempted by binding arbitration in the collective bargaining agreement because the claim would necessarily require the court to examine the terms of the collective bargaining agreement in order to determine whether the conduct could possibly be intended to cause emotional distress). However, where a claim for intentional infliction of emotional distress derives from conduct **unrelated to** employment matters covered by the collective bargaining agreement, such a claim does not fall within the CBA and is not subject to arbitration. *Gudin* at *10. The question before us, then, is whether the allegations underlying Ms. Bleise's intentional infliction of emotional distress claim are related to employment matters governed by the CBA. To answer this question, we must examine the specific allegations Ms. Bleise made in her complaint.

**{¶ 21}** While the allegations underlying Ms. Bleise's negligence claim related to the conditions surrounding the inmate's attack, the allegations underlying her intentional infliction of emotional distress claim related to ODRC's response to the attack. Specifically, the complaint stated:

> The Defendants actions after the attack occurred, by denying the severity of the Plaintiff's injuries, by trying to place fault on the Plaintiff, by failing to call emergency personnel to the scene of the incident to be taken to the hospital, by requiring the Defendant to return to work the next day, by failing to properly fill out procedurally required use of force forms . . . , all were designed to inflict intentional emotional distress on the Plaintiff, which has occurred.

(Compl. at ¶ 12.) We will examine each of these allegations individually to determine if they relate to an employment matter covered by the CBA.

**{¶ 22}** First, Ms. Bleise alleges ODRC denied the severity of her injuries, blamed Ms. Bleise for the violence, and failed to call emergency personnel. These allegations relate to

ODRC's immediate response to the attack just after it occurred. As noted in our discussion of the negligence claim above, Article 11 of the CBA specifically covers health and safety in the workplace and requires the employer to "comply with applicable Federal, State and local safety laws, rules and regulations, and Agency safety rules and regulations." (Mot. to Dismiss, Ex. A at Section 11.01.) Within the health and safety provisions, the CBA contains subsections addressing "Unsafe Conditions" and "Workplace Violence." (Mot. to Dismiss, Ex. A at Sections 11.03 and 11.04.) The subsection for "Unsafe Conditions" provides:

> [M]atters related to patients, residents, clients, youths and inmates which are abnormal to the employees' workplace shall be reported to their supervisor. If the supervisor does not abate the problem, the matter should then be reported to an Agency/Facility safety designee. In such event, the employee shall not be disciplined for reporting these matters to these persons. An Agency/Facility safety designee shall abate the problem or will report to the employee or his/her representative in five (5) days or less reasons why the problem cannot be abated.

(Mot. to Dismiss, Ex. A at Section 11.03.) Additionally, the subsection addressing "Workplace Violence" states:

> The Employer and the Union recognize that violence against employees is serious and requires violence prevention programs. Agencies will develop practices and procedures aimed at reducing risk of job-related violence. Agency plans shall consider Occupational Safety and Health Administration (OSHA) guidelines for preventing workplace violence to guide development of each Agency plan. Agency plans shall be reviewed with the Agency Health and Safety Committee which shall be provided an opportunity for input.

(Mot. to Dismiss, Ex. A at Section 11.04.) Given the language of these provisions and the more general focus of Article 11 on employee health and safety, we conclude Ms. Bleise's allegations involving ODRC's immediate response to the attack just after it occurred are related to employment matters covered by Article 11 of the CBA and its subsections. *See Lucki v. Ohio Dept. of Rehab. & Corr.*, 2011-Ohio-5404, ¶ 26 (10th Dist.) ("Not only is arbitration a favored policy in labor disputes," but courts generally do not require a CBA "to anticipate every possible permutation and resulting point of disagreement and then include

it in the agreement to achieve the required specificity that would assure resolution through the grievance and arbitration provisions of the agreement." Instead, where the agreement addresses a general subject and the plaintiff's claim raises an issue related to that general subject, "it matters not that the agreement fails to specify" the particular scenario at issue in the allegation, and the arbitration provisions govern resolution of the dispute). Thus, the Court of Claims properly concluded it lacked subject-matter jurisdiction over those allegations.

{¶ 23} Ms. Bleise next alleges ODRC required her to return to work the day after the attack. Several provisions of the CBA relate to this allegation. Article 12 of the CBA governs "Staffing Concerns" and provides "[t]he Union and the State mutually desire that staffing levels in State institutions are sufficient to ensure safe, high quality, effective delivery of institutional service[s]." (Mot. to Dismiss, Ex. A at Article 12.) Article 29 governs "Sick Leave" and provides "[s]ick leave shall be granted to employees who are unable to work because of illness or injury of the employee." (Mot. to Dismiss, Ex. A at Section 29.02.) Article 29 additionally states "[i]t is the policy of the State of Ohio to not unreasonably deny sick leave to employees when requested." (Mot. to Dismiss, Ex. A at Section 29.04.) Additionally, Article 31 governs unpaid leaves of absence "upon request," and Article 34 governs "Service-Connected Injury and Illness." (Mot. to Dismiss, Ex. A at Section 31.01; Mot. to Dismiss, Ex. A at Article 34.) Given these provisions, we conclude Ms. Bleise's allegation that ODRC required her to return to work the day after the attack relates to an employment matter covered by the CBA. The Court of Claims did not err, therefore, in concluding it lacked subject-matter jurisdiction over this allegation.

{¶ 24} Ms. Bleise's final allegation under her intentional infliction of emotional distress claim is that ODRC failed to complete required use-of-force forms following the attack. Through this allegation, Ms. Bleise asserts ODRC failed to follow its own policies and procedures, bringing this allegation squarely within a matter related to her employment with ODRC. Specifically, Article 5 governs "Management Rights," and provides "the Employer retains the rights to . . . make any and all rules and regulations." (Mot. to Dismiss, Ex. A at Article 5.) Ms. Bleise's allegation that ODRC, as her employer, failed to follow its own rules and policies related to the completion of use-of-force forms is, on its face, an allegation involving the terms and conditions of Ms. Bleise's employment

and is, therefore, a workplace matter covered by the CBA. *Hassey*, 2018-Ohio-3958, at ¶ 22. Thus, the Court of Claims did not err in concluding it lacked subject-matter jurisdiction over Ms. Bleise's final allegation under her intentional infliction of emotional distress claim.

{¶ 25} Having determined all of Ms. Bleise's allegations underlying her intentional infliction of emotional distress claim are directly related to employment matters covered by the CBA and therefore preempted by the CBA arbitration provision, the trial court did not err in dismissing the intentional infliction of emotional distress claim for lack of subject-matter jurisdiction pursuant to Civ.R. 12(B)(1). We overrule Ms. Bleise's third assignment of error.

## VI.  Fourth Assignment of Error–Breach of Contract

{¶ 26} In her fourth and final assignment of error, Ms. Bleise argues the Court of Claims erred in dismissing her claim for breach of contract. In her complaint, Ms. Bleise alleged ODRC breached an "employment contract" by failing "to provide adequate, safe measures, policies, and procedures[] to protect [her]." (Compl. at ¶ 15.) Similar to her negligence claim, Ms. Bleise's claim for breach of contract alleges a breach of the terms and conditions of her employment covered by the CBA, including the health and safety provisions contained in Article 11. Thus, binding arbitration through the CBA grievance procedure is her sole remedy, and the Court of Claims correctly determined it lacked subject-matter jurisdiction over this claim. *Lemay*, 2018-Ohio-1311, at ¶ 24-25; *Cerrone*, 2012-Ohio-953, at ¶ 7-8. Because the Court of Claims did not err in dismissing Ms. Bleise's claim for breach of contract pursuant to Civ.R. 12(B)(1), we overrule Ms. Bleise's fourth and final assignment of error.

## VII.  Additional Arguments Related to Civ.R. 12(B)(6)

{¶ 27} In light of our determination that the Court of Claims lacked subject-matter jurisdiction to hear any of Ms. Bleise's claims and correctly dismissed the complaint in its entirety pursuant to Civ.R. 12(B)(1), we need not address Ms. Bleise's remaining arguments related to whether dismissal was alternatively warranted under Civ.R. 12(B)(6). *Brust v. Franklin Cty. Sheriff's Office*, 2017-Ohio-9128, ¶ 25 (10th Dist.) (where one argument under an assignment of error is dispositive, the remaining arguments raised under the

same assignment of error are moot and the appellate court need not address them); *Southgate Dev. Corp. v. Columbia Gas Transm. Corp.*, 48 Ohio St.2d 211, 215 (1976) (where dismissal is warranted under Civ.R. 12(B)(1) for lack of subject-matter jurisdiction, "it is inappropriate" for a court to additionally consider a Civ.R. 12(B)(6) motion to dismiss for failure to state a claim upon which relief can be granted).

## VIII. Disposition

{¶ 28} Based on the foregoing reasons, the Court of Claims did not err in granting ODRC's Civ.R. 12(B)(1) motion to dismiss for lack of subject-matter jurisdiction. Having overruled Ms. Bleise's four assignments of error, we affirm the judgment of the Court of Claims of Ohio.

*Judgment affirmed.*

MENTEL, J., concurs.
JAMISON, P.J., concurs in part and dissents in part.

JAMISON, P.J., concurring in part and dissenting in part.

{¶ 29} I agree with the majority decision's conclusion that the Court of Claims of Ohio did not err in dismissing the claims for negligence and breach of contract. However, I would find that the Court of Claims erred in its dismissal of the claim for intentional infliction of emotional distress. I, therefore, respectfully concur in part and dissent in part.

{¶ 30} As the majority decision recognizes, where a collective bargaining agreement provides for final and binding arbitration, claims for intentional infliction of emotional distress based on allegedly wrongful acts related to employment matters covered by the collective bargaining agreement are subject to arbitration. *Gudin v. W. Reserve Psych. Hosp.*, 2001 Ohio App. LEXIS 2634, *10 (10th Dist. June 14, 2001). A claim for intentional infliction of emotional distress is preempted by a collective bargaining agreement where a court would be required to consider or interpret the terms of that agreement to determine whether it authorizes the allegedly wrongful acts that underlie the claim. *Id.* at *10-11. On the other hand, claims for intentional infliction of emotional distress premised on conduct unrelated to employment matters covered by the collective bargaining agreement are cognizable in a court of law. *Id.* at *11. In other words, "if plaintiff's [intentional-infliction-of-emotional-distress] claim is premised upon personally abusive conduct by the employer

and its supervisors (or conduct that is not arguably sanctioned by the labor contract), the [intentional-infliction-of-emotional-distress] claim is not preempted." *Id.*

{¶ 31} In this case, Bleise claimed ODRC intentionally inflicted emotional distress on her "after the attack occurred, by denying the severity of [her] injuries, by trying to place fault on [her], by failing to call emergency personnel to the scene of the incident [so she could] be taken to the hospital, by requiring [her] to return to work the next day, [and] by failing to properly fill out procedurally required use[-]of[-]force forms." (Compl. at ¶ 12.) The majority begins it analysis with consideration of the first three allegations: ODRC denied the severity of Bleise's injuries, blamed her for the attack, and failed to call for emergency medical assistance for her. In essence, these allegations all challenge ODRC's response after a prisoner attacked Bleise and inflicted injuries on her.

{¶ 32} As the majority decision points out, Article 11 of the CBA addressed "Health and Safety." Article 11 required ODRC to follow safety laws, rules, and regulations, as well as develop practices and procedures aimed at reducing the risk of job-related violence. Article 11 also required ODRC to abate "abnormal" matters related to inmates that employees reported. (Mot. to Dismiss, Ex. A at Section 11.03.) Nothing, however, in Article 11 related to or covered how ODRC must respond after safety measures failed, and an employee suffered an attack at the hands of a prisoner. Thus, the CBA did not govern ODRC's alleged wrongful post-attack conduct of denying the severity of Bleise's injuries, blaming her for the attack, or failing to call emergency personnel. I would conclude, therefore, that the Court of Claims had subject-matter jurisdiction over Bleise's claim for intentional infliction for emotional distress to the extent she premised it on these allegations.

{¶ 33} The majority decision reaches the opposite conclusion by abandoning the law we laid out in *Gudin* and adopting a more expansive standard. According to the majority decision, as long as a collective bargaining agreement addresses a general subject that is related to an issue raised in a plaintiff's claim for intentional infliction of emotional distress, the arbitration provisions of the agreement govern the resolution of the dispute. Thus, the majority decision reasons, because the CBA addressed health and safety and that general subject is broadly related to an employer's treatment of an employee after a prisoner attack, Bleise must arbitrate her dispute. Under *Gudin*, however, the Court of Claims has

jurisdiction over a claim of intentional infliction of emotional distress based on Bleise's allegations of ODRC's post-attack conduct because the CBA did not address that conduct, making consideration or interpretation of the CBA unnecessary.

{¶ 34} Next, the majority decision contends that the allegation that ODRC failed to properly fill out the necessary use-of-force form is also related to an employment matter covered by the CBA. However, nothing in the CBA addressed use-of-force forms, or the completion of them. The CBA, consequently, did not govern this alleged wrongful conduct.

{¶ 35} The majority decision assumes that the completion of a use-of-force form is required by a ODRC rule, and states the CBA gave ODRC the authority to "make any and all rules and regulations." (Def.'s Ex. A, art. 5.) The majority decision has identified a potential connection between Bleise's allegation and the CBA. The majority decision, however, has not explained how evaluation of Bleise's allegation that ODRC wrongfully failed to complete a use-of-force form would entail consideration or interpretation of the CBA, thus requiring arbitration of her claim for intentional infliction of emotional distress.

{¶ 36} Finally, I agree with the majority decision that Bleise's last allegation, regarding her forced return to work, pertains to an employment matter governed by provisions of the CBA. Article 31 of the CBA governed leaves of absence, and Article 34 governed service-connected injury and illness. Because both of these provisions addressed leave from work, they related to Bleise's allegation that ODRC wrongfully required her to return to work the day after the attack. Consequently, to the extent that Bleise premised her claim on that allegation, the Court of Claims properly concluded that it lacked subject-matter jurisdiction over it.

{¶ 37} Where a claim for intentional infliction of emotional distress encompasses allegedly wrongful conduct both related and unrelated to employment matters covered by a collective bargaining agreement, the claim survives dismissal insofar as it is unrelated to covered employment matters. *Gudin*, 2001 Ohio App. LEXIS 2634, at *12-14 (10th Dist. June 14, 2001). I would find, therefore, that the Court of Claims erred in ruling that it lacked subject-matter jurisdiction over the entirety of Bleise's claim for intentional infliction of emotional distress. Absent the allegation that ODRC required Bleise to return to work the day after the attack, the Court of Claims possessed subject-matter jurisdiction to adjudicate the claim for intentional infliction of emotional distress.

{¶ 38} I, consequently, would consider whether Bleise stated a claim for intentional infliction of emotional distress. To prove a claim for intentional infliction of emotional distress, a plaintiff must demonstrate (1) the defendant intended to cause the plaintiff serious emotional distress, (2) the defendant's conduct was extreme and outrageous, and (3) the defendant's conduct was the proximate cause of the plaintiff's serious emotional distress. *Phung v. Waste Mgt., Inc.*, 1994-Ohio-389, 71 Ohio St.3d 408, 410. The issue of whether the defendant's conduct rises to the level of extreme and outrageous conduct is a question of law. *Friedman v. Bexley Pub. Library*, 2025-Ohio-1799, ¶ 25 (10th Dist.); *Moore v. Impact Community Action*, 2013-Ohio-3215, ¶ 15 (10th Dist.). Liability for intentional infliction of emotional distress "does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." (Quotation marks deleted and citation omitted.) *Yeager v. Local Union 20, Teamsters*, 6 Ohio St.3d 369, 375 (1983). To the contrary,

> [l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

*Id.*, quoting Restatement of the Law 2d, Torts, § 46, Comment d (1965).

{¶ 39} The Court of Claims dismissed Bleise's claim for failure to state a claim because (1) "there [was] no evidence to permit a reasonable inference that [ODRC] intended for [Bleise] to be harmed, emotionally or otherwise," and (2) "it [could not] be inferred that [ODRC's] conduct was so extreme and outrageous that it went beyond all possible bounds of decency so as to be intolerable in a civilized community." (Aug. 9, 2024 Decision at 6.) I would disagree with both reasons for dismissal.

{¶ 40} First, I would conclude that the Court of Claims erroneously used a heightened standard to review whether Bleise sufficiently pleaded the first element of her claim. Under Ohio's notice-pleading requirement, a plaintiff need only provide "a short and plain statement of the claim," Civ.R. 8(A), in order to give the adverse party fair notice of the nature of the claim. *Wells Fargo Bank, N.A. v. Horn*, 2015-Ohio-1484, ¶ 13. Civ.R.

12(B)(6) motions "merely ascertain whether the complaint alleges the elements of the claim with sufficient particularity" so that the adverse party receives its fair notice. *In re Election Contest of Democratic Primary Election Held May 4, 1999, for Clerk, Youngstown Mun. Court*, 1999-Ohio-302, ¶ 10. Notably, the plaintiff is not required to prove her case at the pleading stage because, very often, the plaintiff cannot obtain the necessary evidence until the discovery stage of litigation. *York v. Ohio State Hwy. Patrol*, 60 Ohio St.3d 143, 145 (1991). "[A] motion to dismiss is a procedural tool which tests the sufficiency of the complaint, not the sufficiency of the evidence." *Pfalzgraf v. Miley*, 2019-Ohio-4920, ¶ 13 (7th Dist.).

{¶ 41} Here, Bleise stated in her complaint that ODRC engaged in a variety of actions—denial of the severity of her injuries, an attempt to scapegoat her, failure to seek emergency medical care for her, and the failure to properly fill out necessary forms— "designed to inflict intentional emotional distress" on her. (Compl. at ¶ 12.) In these allegations, Bleise named the acts ODRC allegedly performed to intentionally cause her emotional distress. Bleise also alleged in the complaint that she "suffered excruciating pain, embarrassment, . . . psychological trauma," and other injury. *Id.* at 6. Consequently, I would conclude that Bleise set forth sufficient facts at the pleading stage to establish that ODRC intended to cause her serious emotional distress.

{¶ 42} Second, I would find the Court of Claims erred in concluding, as a matter of law, that ODRC's actions were not extreme and outrageous. Bleise alleged in her complaint significant injuries: a broken nose, orbital fractures, a concussion, and traumatic brain injury. However, according to Bleise, ODRC failed to call emergency personnel to the scene of the attack so she could be transported to the hospital for treatment of her injuries. I would conclude that the failure to seek emergency medical care and transportation to the hospital for a seriously injured employee may constitute extreme and outrageous conduct, thus precluding dismissal of Bleise's claim under Civ.R. 12(B)(6). Because Bleise has alleged at least one act that may qualify as extreme and outrageous, I would not assess the remainder of the allegedly wrongful actions that underlie her claim.

{¶ 43} In sum, I would conclude that the Court of Claims erred in dismissing Bleise's claim for intentional infliction of emotional distress. Accordingly, I would sustain Bleise's

third assignment of error.  Because the majority decision reaches a different result, I respectfully concur in part and dissent in part.

_____